Dennis Ray ANTHONY, Appellant,

v.

STATE of Alaska, Appellee.

No. 1774.

Supreme Court of Alaska.

April 1, 1974.

Lyle R. Carlson, Merdes, Schaible, Staley & DeLisio, Fairbanks, for appellant.

Monroe Clayton, Dist. Atty., Fairbanks, John E. Havelock, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

## OPINION

BOOCHEVER, Justice.

Appellant Dennis Ray Anthony was convicted by a jury of first degree murder [1] after a trial lasting five days. From multiple assignments of error we find controlling an issue pertaining to the failure to give a cautionary instruction with reference to the testimony of an alleged accomplice.[2]

La Wayne Hofhines died in the late evening hours of January 21, 1972, the victim of seven gunshot wounds. Two of the seven bullets entered from the front, one piercing his chest and the other, his right forehead. The remaining five entered from the rear at the base of the skull. All seven shots were fired at close range.

Verna Louise Hofhines "discovered" her husband's death and reported it to a neighbor who called the police. Evidence developed at trial indicated that on the night of the murder Anthony was in possession of a .22 caliber Colt automatic pistol which the ballistics tests of the Federal Bureau of Investigation demonstrated was the weapon used to fire the empty shell casings found at the scene of the death.

A complaint was filed against the appellant and Verna Louise Hofhines and a joint preliminary hearing was held. Six witnesses were called, and the FBI ballistics reports were introduced. The state's theory at the time of the hearing was that Verna Hofhines killed her husband with a weapon procured for her by Anthony. Based upon the testimony at the hearing, Verna Hofhines was held for trial, and Anthony was discharged, the district judge finding insufficient evidence of guilt to bind him over for trial as an aider or abettor.

Grand jury proceedings against Anthony were commenced March 17, 1972. The only witness before the grand jury was one Cpl. Swackhammer of the Alaska State Troopers. His testimony amounted to a summary of the same evidence which had been adduced at the preliminary hearing; [3] he added only a statement that one Katie Williams told him that she saw a brief meeting between Anthony and Verna Hofhines in a bar on the night before the killing. During the grand jury proceedings, the state persisted in its theory that Anthony aided and abetted Verna Hofhines in the murder of her husband. The grand jury returned murder indictments against both Hofhines and Anthony.

A joint jury trial of the two defendants commenced on June 12, 1972. Soon after the selection of the jury, Verna Hofhines entered a plea of guilty to the murder

---

1. AS 11.15.010.

2. Crim.R. 30(b)(2) provides in pertinent part:
 The court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict, and whether or not requested to do so, shall give the following basic instructions on all proper occasions:

 . . . . .

 (2) That the testimony of an accomplice ought to be viewed with distrust and the oral admissions of a party with caution.

3. The following material summarizes Cpl. Swackhammer's testimony before the Grand Jury: he gave the date and time of the original police call; described the scene of the crime, including the finding of six shell casings and the subsequent bringing of the seventh by Verna Hofhines to the police; reported the autopsy findings; recounted the statements of the neighbors setting the time of the firing of two shots; recounted double-hearsay conversations of the decedent in which the decedent revealed his marital difficulties and evidenced a mortal fear of his wife; recounted analysis of the empty shell casings, showing the shells contained barium but not antimony; noted that he found women's gloves which his tests showed to have barium on them at the scene of the killing; reported the statements of Carlin regarding the loan of a .22 caliber automatic to Anthony; reported sending the Carlin gun to the FBI along with the shell casings and receiving a report that the shells were fired by the Carlin gun; reported the statements of Carlin and his friends regarding the time of the loan of the weapon and the disappearance of seven shells during the period of the loan; discussed the statement of Delores Jennings placing Anthony at a theater at the time of the killing; recounted Katie Williams' statements regarding a meeting between Verna Hofhines and Anthony in a bar on the night before the killing.

charge,[4] and she subsequently became the principal witness for the state. She testified that she first met Anthony in November 1971. She said that her relationship with Anthony was casual and that she had seen him at a local nightclub quite often. She related that approximately a week before the killing she asked Anthony for help because she "wanted to be a widow". She further testified that she had no money to pay Anthony, and in fact did not pay Anthony any money, but that Anthony nonetheless agreed to find somebody who could "do the job" for the sum of $5,000, to be paid after settlement of the deceased's insurance.

Verna Hofhines said she saw Anthony again in the French Quarter Bar approximately two days before her husband died, at which time he told her to "leave everything to him." She saw Anthony again at approximately 5:30 p. m. at her home on the evening of her husband's death. When her husband came home, Anthony left. Verna Hofhines testified that she then met Officer Clements of the Fairbanks Police Department, with whom she worked as a narcotics agent. She and Officer Clements went to the Flame Lounge where a "buy" was supposed to occur. When the seller did not arrive, she left the Flame Lounge and arrived home at 8:34 p. m. She discovered upon entry that her husband was not dead as she had thought he would be. She returned to the Flame, where she met Anthony at around midnight, at which time he advised her that she was a widow. She said that she remained at the Flame Lounge until approximately 2:30 a. m., when she returned home to find her husband dead on the living room floor. She testified that upon arriving home she saw some shell casings near her husband's body, and she picked one up and put it into her diaper bag.

The state adduced considerable evidence in corroboration of Hofhines' testimony. Katie Williams confirmed that Hofhines and Anthony had conversed together in the French Quarter Bar. Steve Carlin testified that he loaned a .22 caliber semi-automatic Colt pistol to Anthony at 4:30 or 5:00 p. m. on the day of the murder because Anthony said he wanted to go rabbit hunting. Carlin said that when the weapon was returned at about midnight, there were only one or two shells in it, but that there had been eight at the time of the loan. An FBI ballistics expert testified that he had conducted tests which indicated that Carlin's pistol was the weapon which had fired the six empty shell casings found by the police in the Hofhines' living room. A neighbor was able to identify as gunshots two "cracks" heard between 8:00 and 9:30 p. m. on the evening of the killing, thus establishing a probable time of death.

## I. THE ACCOMPLICE CAUTIONARY INSTRUCTION.

We first consider Anthony's contention that the failure to give the mandatory instruction that the testimony of an accomplice ought to be viewed with distrust was an error which we must consider on appeal despite the failure of trial counsel to request the instruction or object to the trial court's omission of it.

 Based upon her testimony, Hofhines was an accomplice in the killing of her husband. Accordingly, the failure to give the instruction constitutes error.[5] Criminal Rule 30(b)(2)[6] requires the trial court, *whether or not requested to do so*, to instruct on all proper occasions that the testimony of an accomplice ought to be

---

4. Verna Hofhines entered her plea of guilty to the murder charge and testified against Anthony as part of an agreement in which the district attorney promised to recommend a six-year prison sentence (although advising Verna Hofhines that such a recommendation was not binding on the court). Despite that recommendation, she was sentenced to a term of 20 years, which we affirmed. Hofhines v. State, 511 P.2d 1292 (Alaska 1973).

5. As to whether Mrs. Hofhines was an accomplice as a matter of law, *see infra* notes 19–24 and accompanying text.

6. The pertinent part of Crim.R. 30(b)(2) is quoted *supra* note 2.

viewed with distrust. Ordinarily, this court will not notice errors in jury instructions unless timely request is made for an omitted instruction or timely objection made to an erroneous one.[7] We have previously stated, however, that the express language of Criminal Rule 30(b)(2) makes a request for the cautionary instruction unnecessary. For example, in Beavers v. State, we said:

> [D]espite the fact that an instruction as to the weight to be given an accomplice's testimony was not requested, it is not necessary for such a request to have been made.[8]

Despite our disinclination to reverse where counsel for the defense has not aided the

trial judge in properly applying the law to the facts of his client's case, we reluctantly conclude that the failure of the court to give the cautionary instruction is an error which we must notice on appeal.

We must now consider whether the omission of the cautionary instruction was a prejudicial error requiring reversal or was merely harmless error.[9] We look first to those cases interpreting similar mandatory accomplice instruction rules. Construing a territorial statute similar to Rule 30(b), two pre-statehood cases held that wherever the primary evidence supporting conviction is the testimony of an accomplice, the failure to give the instruction is prejudicial error.[10] Here, where

---

7. Avery v. State, 514 P.2d 637, 643 (Alaska 1973) ; Crim.R. 30(a). *See* Crim.R. 47(b) which states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We do not apply the usual "plain error" test because the entire standard of review is encompassed within the perimeters of Crim.R. 30(b)(2) ; the mandatory nature of the rule represents a judgment that failure to give the instruction where called for *always* deprives the defendant of a substantial right.

8. Beavers v. State, Alaska, 492 P.2d 88, 97. Crim.R. 30(b)(2) is derived from an Oregon law adopted as an Alaska statute. Carter's Alaska Ann.Code § 673 at 283–84. The Oregon statute contained no language requiring the court to give the instruction "whether or not requested to do so". The Oregon Supreme Court construed the statute (subsequently to its Alaskan adoption) to demand the giving of the instruction on all proper occasions, but nevertheless held that a request for the instruction was necessary to preserve the error on appeal. State v. Edmundson, 120 Or. 297, 249 P. 1098, 1099 (1926). However, the United States Court of Appeals for the Ninth Circuit specifically refused to apply the *Edmundson* requirement of a request for the instruction in interpreting the Alaska statute which was the predecessor of Crim.R. 30(b)(2). Anderson v. United States, 157 F. 2d 429, 430, 11 Alaska 198 (9th Cir. 1946). The holding of *Anderson* was made explicit when the "whether or not requested" language was added in transferring the statutory provision to the Rules of Criminal Procedure.

9. Love v. State, 457 P.2d 622, 630–632 (Alaska 1967).

10. Stephenson v. United States, 211 F.2d 702, 705, 14 Alaska 603 (9th Cir. 1954) ; Anderson v. United States, 157 F.2d 429, 430, 11 Alaska 198 (9th Cir. 1946). Anthony's position derives substantial additional support from Bakken v. State, 489 P.2d 120, 125 (Alaska 1971) where the court found failure to give the oral admissions part of the Rule 30(b)(2) instruction to be prejudicial and plain error. There conviction was procured substantially on the testimony of a witness who related what could have been an oral admission by the defendant. The court said:

> Given the closeness of the case and the importance of Johansen's testimony concerning Bakken's purported admission, we believe that the trial court's failure to give this mandatory cautionary instruction was so obviously prejudicial that we chose to notice the point despite the absence of any objection on the part of Bakken's counsel. On the basis of our study of the record, we hold that it was plain error on the trial court's part not to have given the mandatory cautionary instruction, and further hold that the omission of this instruction cannot be characterized as harmless error. *Id.* at 125.

*See* Johnson v. State, 501 P.2d 762, 766–768 (Alaska 1972) where we held that the requirement of corroboration of the testimony of an "injured female" under AS 12.45.040 was substantially similar to the requirement of corroboration of accomplice testimony, and that failure to give the instruction requiring corroboration was plain and prejudicial error where the defendant's conviction for procuring a female for the purposes of prostitution was based entirely upon the female's testimony. *Cf.* Johnston v. State, 489 P.2d 134, 137–138 (Alaska 1971) where accomplice testimony was not a substantial factor in procuring convic-

the only evidence placing Anthony at the scene of the crime or reliably demonstrating motive or guilty knowledge was the testimony of the accomplice, one is hard pressed to argue (and the state does not argue) that conviction was not substantially procured by Verna Hofhines' testimony.

Recent federal decisions have held that failure to give a cautionary instruction where an accomplice gives testimony crucial to conviction is prejudicial error.[11] The state in its brief all but concedes that reversible error was committed, stating:

> In cases involving accomplice testimony the jury is unaware of all the deals, prejudice and distrust between the criminal parties and it becomes necessary to instruct the jury concerning an accomplice, the necessary corroboration required of such accomplice testimony and the weight to be afforded it by the jury.
>
> It is therefore, the logical purpose of Rule 30(b), and other instructions pertaining to accomplice testimony, to inform the jury of such intrigue, contrivance, distrust and prejudice to afford fundamental fairness to the parties consistent with due process of law.

The state seeks to avoid the impact of the concededly applicable rule by arguing that the cross-examination of Verna Hofhines and defense counsel's closing argument sufficiently apprised the jury of the lack of reliability of accomplice testimony,[12] so that the failure of the court to give the accomplice instruction was harmless. Although the state relies upon the *questions* asked on cross-examination,

Verna Hofhines' *answers* are material in assessing its impact. For instance, in response to a general question regarding her reasons for changing her plea and testifying for the state, Verna Hofhines was allowed to relate at length a story of her own contrition and feeling that Anthony was "more animalistic than human", "need[ed] to be punished as well as myself" and was a substantial contributing cause of her own criminal behavior. These responses made the need for the cautionary instruction manifest. But even supposing cross-examination and closing argument to have been devastating, the purpose of the rule is to raise the issue of accomplice credibility above mere adversary colloquy. The giving of the instruction to view the testimony of an accomplice with distrust clothes the issue with the cloak of the judge's impartial authority and thus mandates application of that criterion in the jury's deliberation. For this reason alone, the failure to give the accomplice instruction cannot be regarded as harmless under the circumstances of this case.

■ The state also suggests that sufficient corroborating evidence was adduced so that the error was harmless under the test enunciated in Love v. State.[13] Only if we can fairly say that the error "did not appreciably affect the jury's verdict"[14] can we conclude that infringement of the right to the instruction was harmless. We must therefore compare the effect that Verna Hofhines' testimony probably had upon the jury with the impact it probably would have had under proper instructions.[15] In

tion, but was introduced by the defendant for the purpose of exoneration.

11. United States v. Davis, 439 F.2d 1105 (9th Cir. 1971) (witness was only link between defendant and narcotics brought across border by witness while in defendant's car); United States v. Owens, 460 F.2d 268 (10th Cir. 1972) (testimony of two accomplices was only evidence that defendant possessed stolen money orders, error plain and prejudicial).

12. It was brought out at trial that Hofhines had pled guilty in exchange for the district attorney's agreement to recommend a six-year

sentence, and that at the time of her testimony, she had not yet been sentenced. Mrs. Hofhines subsequently received a sentence of twenty years, which we affirmed on appeal; Hofhines v. State, 511 P.2d 1292 (Alaska 1973).

13. 457 P.2d 622 (Alaska 1967).

14. *Id.* at 632.

15. *See* Love v. State, 457 P.2d at 630 where we said:
 The test is not whether, with the erroneous matter elided from the record, there

all probability, conviction could not have been procured without Verna Hofhines' testimony, and the impact of a judicial admonition regarding the credibility of that testimony is qualitatively different from the effect of counsel's argument. Because the testimony alone was a substantial factor leading to Anthony's conviction, the conclusion that the failure properly to instruct under Criminal Rule 30(b)(2) constituted prejudicial error is inescapable.[16]

## II. SUFFICIENCY OF THE EVIDENCE

Anthony further argues that we should order his acquittal because the evidence at trial was insufficient to support conviction as a matter of law. Viewing the evidence, as we must, in the light most favorable to the state,[17] we conclude that no serious challenge may be made to its sufficiency with respect to the defendant's conviction either as the perpetrator or as an aider and abettor.[18] The only challenge of substance urged by appellant is the contention that Verna Hofhines' testimony is inherently unreliable. The assessment of witness credibility is exclusively within the province of the jury.

## III. ISSUES WHICH MAY ARISE ON RETRIAL

Because retrial of this case will necessarily result in the presentation of several

issues here assigned as error, we consider three issues which would not otherwise be dispositive.

### A. The "Accomplice-as-a-Matter-of-Law" Instruction.

The trial court's instruction 10 stated in pertinent part:

> You are instructed that an accomplice is one who, being of mature age and in possession of her natural faculties, cooperates with or aids or assists another in the commission of a crime. You are instructed that the witness Verna Louise Hofhines is an accomplice.

Appellant claims this instruction to be erroneous because the jury could infer from the word "accomplice" that the crime was perpetrated by more than one person, thus defeating the defense argument that Verna Hofhines was the sole perpetrator. In the context of this case, appellant argues, the accomplice-as-a-matter-of-law instruction does not help the defendant, but in fact defeats his most credible defense. Trial counsel specifically refused the opportunity to object to this instruction, and ordinarily for that reason we would not entertain appellant's argument.

There are no Alaska cases precisely in point. The failure to give an accomplice-as-a-matter-of-law instruction was an alternative ground of reversal in Mahle v.

---

would be enough evidence to support a conviction. It is not for us to speculate on the outcome at a retrial, absent the erroneous matter. The pivotal question is what the error might have meant to the jury. Our function is to consider not how the error would have affected us if we had tried the case, but how it may have affected a jury of reasonable laymen. It is the impact on their minds which is critical in determining whether an error impaired or affected the substantial interest of the defendant in having a fair trial.

16. United States v. Davis, 439 P.2d 1105 (9th Cir. 1971); Bakken v. State, 489 P.2d at 125; see State v. Baker, 98 Ariz. 151, 402 P.2d 570 (1965); State v. Gonzales, 92 Idaho 152, 438 P.2d 897, 901 (1968); cf. Flores v. State, 443 P.2d 73, 80–81 (Alaska

1968) (the failure to use the precise language of Crim.R. 30(b)(2) where defendant's requested instruction contained a similar deviation, where there was no objection to the instruction as given, and where there was extensive corroborating evidence, held not to be prejudicial).

17. Stevens v. State, 514 P.2d 3, 4 n. 2 and cases there cited (Alaska 1973).

18. AS 12.15.010 provides:
The distinction between an accessory before the fact and a principal, and between principals in the first and second degree is abrogated; and all persons concerned in the commission of a crime, whether they directly commit the act constituting the crime or, though not present, aid and abet in its commission, shall be prosecuted, tried, and punished as principals.

State.[19] There one Ahern testified that the sole defendant, Mahle, and two others planned a burglary in the presence of Ahern. Ahern did not participate in the actual burglary of a Sears store, but he subsequently did help pry open a stolen safe and dispose of its contents. He also received part of the money. The trial judge instructed the jury as to whom the law regards as an accomplice and explained what kind of corroboration was necessary. He refused to instruct that Ahern was an accomplice as a matter of law. We held this to be error. But *Mahle* is distinguishable from *Anthony* because in *Mahle* the testimony of one of the two non-defendant perpetrators as well as Ahern's own testimony made Ahern an accomplice to an indisputably multi-party crime, and led to no inference of the defendant's participation in the crime.[20] We note, however, that the trial judge in *Anthony* probably framed his instruction in understandable reliance on *Mahle*.

Likewise Flores v. State[21] is not in point because the participation of three perpetrators other than the defendant insulated the defendant from the improper judicial implication that the defendant was involved, and, moreover, the accomplice question was held on the facts to be one for the jury.

The Oregon Supreme Court stated in State v. Gibson[22] that the giving of the accomplice-as-a-matter-of-law instruction was error because of the inference of the guilt of the defendant which arises when the defendant is the only other person implicated in the commission of the crime. There two persons beat and robbed a third. One perpetrator, previously convicted, testified against the other. The court found that instructing the jury that the testifying perpetrator was an accomplice was erroneous. However, the error was harmless because the defendant was admittedly a co-perpetrator of the beating, and only the question of complicity in the robbery was at issue.

In two California cases, the defendants have argued that the failure to give an accomplice-as-a-matter-of-law instruction was erroneous. In one, the California Supreme Court concluded that the requested instruction would have prejudiced the defendant because of the inference of complicity arising therefrom. The court said:

> However, where a codefendant has made a judicial confession as to crimes charged, an instruction that as a matter of law such codefendant is an accomplice of other defendants might well be construed by the jurors as imputing the confessing defendant's foregone guilt to the other defendants.[23]

In a similar vein, a California District Court of Appeals panel has more recently written:

> Generally, when it appears that a witness is an accomplice as a matter of law, it is error for the trial court to refuse to so instruct the jury, thus leaving to the jury the determination of the question. The case at bench, however, presents a unique, but not unprecedented, situation with respect to this issue. If the trial court instructed the jury that the codefendant was an accomplice as a matter of law, he would, in effect, be instructing the jury that the codefendant was guilty of the offenses charged, thereby

*See* Tarnef v. State, 492 P.2d 109, 116 (Alaska 1971); Thomas v. State, 391 P.2d 18, 25 (Alaska 1964); *see also* Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 769–770, 93 L.Ed. 919, 925 (1949).

19. Mahle v. State, 371 P.2d 21, 25 (Alaska 1962). *See also* State v. Wilson, 93 Idaho 194, 457 P.2d 433, 439 (1969).

20. *See* State v. Hardee, 3 N.C.App. 426, 165 S.E.2d 43, 45 (1969) (erroneous instruction on self defense assumed that defendant fired fatal shot, a contended fact).

21. Flores v. State, 443 P.2d 73 (Alaska 1968).

22. State v. Gibson, 252 Or. 241, 448 P.2d 534 (1968).

23. People v. Hill, 66 Cal.2d 536, 58 Cal. Rptr. 340, 352, 426 P.2d 908, 920 (1967), cert. denied, 390 U.S. 911, 88 S.Ct. 838, 19 L.Ed.2d 884 (1968).

invading the province of the jury with respect to the determination of her guilt or innocence. Under these circumstances, the trial judge was compelled to leave the matter to the jury, and there was no error in refusing to instruct that the codefendant was an accomplice as a matter of law.[24]

■ Nothing in the California or Oregon cases is inconsistent with any of the accomplice doctrines expounded in *Mahle* or *Flores*. We believe the Oregon and California courts correctly concluded that the risk that the jury would infer from the accomplice-as-a-matter-of-law instruction that the defendant was to be presumed guilty outweighs the risk that the jury would not properly discredit accomplice testimony. On retrial, therefore, rather than instructing that Verna Hofhines is an accomplice as a matter of law, the jury should be instructed as to the definition of "accomplice," and should be told to view Verna Hofhines' testimony with distrust *if* it finds her to be an accomplice.

B. The Corroboration Instruction.

The remaining portion of instruction 10, after quoting AS 12.45.020,[25] stated:

The provision of Alaska law which is quoted means that the corroborating evidence required to be given before conviction can be had, must, in itself, and independent of all accomplice testimony, tend to connect the defendant with the commission of the crime charged against him . . . .

This law does not mean that the corroborative evidence alone must be sufficient to justify conviction, but it does require that unless in your judgment the corroborative evidence alone and by it-

self tends to connect the defendant with the crime charged, the defendant should be acquitted, no matter how convincing the accomplice testimony may be.

If you find that the corroborative evidence alone, if any, does tend to connect the defendant with the commission of the crime charged against him, then you should consider all of the evidence *against such defendant,* including all accomplice testimony, and if all of the evidence, including both that of the accomplice and that of the corroborative testimony, convinces you beyond a reasonable doubt of the guilt of the defendant, you should render a verdict accordingly; otherwise, the defendant should be acquitted [emphasis added].

■ From this lengthy instruction, Anthony assigns the words, "against such defendant", as error, asserting that this clause encouraged the jury to consider only evidence against the defendant and to ignore evidence adduced in his favor. Upon reading the whole of the instruction, we find this contention to be without merit, even if proper objection had been raised. We suggest, however, that to avoid any risk of improper inferences the above quoted phrase should be deleted from future instructions.

■ We note, however, that the instruction errs in *favor* of the defendant by requiring the corroborating evidence independently of all accomplice testimony, to lead to an inference of guilt. We have several times held that corroborating evidence need only be sufficient to "induc[e] in the minds of the jurors a rational belief that the accomplice was speaking the truth when he implicated the defendant in the criminal event."[26] Our view that such is

---

24. People v. Valerio, 13 Cal.App.3d 912, 915, 92 Cal.Rptr. 82, 90 (1970) [citations omitted].

25. AS 12.45.020 provides:
A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows the com-

mission of the crime or the circumstances of the commission.

26. Pulakis v. State, 476 P.2d 474, 476 (Alaska 1970) quoting Oxenberg v. State, 362 P.2d 893, 897 (Alaska 1961). *See also* Dimmick v. State, 473 P.2d 616, 617 (Alaska 1970) where we said:
The statutory requirement of corroboration is based on an assumption that an accomplice might falsely accuse others of a

the import of AS 12.45.020 has not changed; an instruction in conformance with this rule should be given upon retrial.

### C. The Aiding and Abetting Instruction.

■ A defendant need not commit every element of an offense to be guilty as a principal under our law, so long as the state proves commission of the whole offense by someone and the aiding or abetting of the offense by the defendant.[27] The trial judge's eleventh instruction explained this principle to the jury and concluded:

Thus it is not incumbent upon the state to prove beyond a reasonable doubt that a defendant committed every element of a crime alleged to sustain a conviction if you believe beyond a reasonable doubt that the offense was committed and that the defendant aided and abetted in its commission.

Appellant claims that the above language permitted the jury to find him guilty of murder even if it did not find that every element of the crime had been committed by someone. He derives this interpretation from the language "a defendant" in a case where only one defendant remained.

■ We find appellant's construction of the language to be strained and, taking into account the full text of the 29 jury instructions, so unreasonable that no juror could have received such an impression. However, to avoid confusion in a case where other instructions are not so carefully drawn by the trial judge, we suggest addition of the portion of the aiding and abetting instruction used by federal courts set out as follows:

You of course may not find any defendant guilty unless you find beyond a rea-

sonable doubt that every element of the offense as defined in these instructions was committed by some person or persons and that the defendant participated in its commission.[28]

## IV. CIRCUMSTANCES FROM WHICH A JURY MAY DRAW IMPROPER INFERENCES OF GUILT

We do not anticipate that the defendant's courtroom status and appearance will present any difficulty upon retrial; nevertheless, we will discuss an error arising from the unfortunate timing of the retraction of his "own recognizance" release in this case.

Immediately after the testimony of Verna Hofhines, the trial judge became aware that Anthony had been released on his own recognizance since the time of the preliminary hearing. The trial judge ordered substantial bail imposed, and when Anthony was unable to post bond he was incarcerated. On the following morning, with the jury already in the courtroom, Anthony was brought into court under guard and unshaven. It is not clear whether Anthony was wearing his own, or jail, clothing; neither can we determine whether the presence of the guard was noticeable. Trial counsel moved for a mistrial upon the ground that the manifest change in Anthony's appearance and custodial status would lead to a jury inference that the trial judge had determined Anthony to be guilty.

■ A defendant is presumed innocent throughout the trial, and he should be permitted to face the jury with the appearance and dignity of a free and innocent man.[29] Convictions have been reversed upon the ground that a defendant was

crime in order to purchase for himself immunity from punishment. This assumption is dispelled and the statutory requirement satisfied when the corroborating evidence tends to induce in the minds of the jurors a rational belief that the accomplice was speaking the truth when he implicated the defendant in the criminal event [footnotes omitted].

27. *See* AS 12.15.010; Tarnef v. State, 492 P.2d at 116.

28. Federal Jury Practice and Instructions § 11.08 at 219.

29. Miller v. State, 249 Ark. 3, 457 S.W.2d 848, 849–850 (1970); Eaddy v. People, 115 Colo. 488, 174 P.2d 717, 718 (1946); *see* Shultz v. State, 179 So. 764 (Fla.1938).

forced to wear prison garb at a trial.[30]
We agree with the United States Court of
Appeals for the Fifth Circuit that:

> It is inherently unfair to try a defendant
> for crime while garbed in his jail uni-
> form, especially when his civilian cloth-
> ing is at hand. No insinuations, indica-
> tions or implications suggesting guilt
> should be displayed before the jury, oth-
> er than admissible evidence and permis-
> sible argument.[31]

Aside from being allowed his own attire,
the defendant upon retrial should also be
permitted to make himself clean and
presentable. He should be allowed to
shave and to shower before appearing in
court. In the courtroom, guards should re-
main outside the observation of the jury,
and should deliver the defendant to the
counsel table before the jury's arrival if
necessary; manacles, shackles and other
physical restraints are, of course, to be
avoided.[32] Deviation from these standards
is justified only to protect the safety and
decorum of the court, to prevent a threat-
ened escape, or to respond to some other
manifest necessity.[33] Such measures should
be taken only after the defendant has been
given an opportunity for a hearing, and the
restraints imposed should be the least in-
trusive which will accomplish the desired
result.[34]

Since we remand upon another issue, we
need not scrutinize the record to determine
whether prejudicial error was committed
here. Our comments are in no manner in-
tended as criticism of the trial judge for
imposing substantial bail upon learning
that a defendant in a murder trial who
possessed a felony record was free on his
own recognizance.

## V. SUFFICIENCY OF THE INDICTMENT

■ Appellant makes a *two-pronged*
attack against the indictment charging him
with the murder: the evidence presented
was both insufficient and incompetent.
We decline to consider the sufficiency
question since appellant did not raise any
objection to the indictment before trial [35]
and since no excuse for this failure
appears.[36]

■ The question of competency of ev-
idence may be subdivided into two argu-
ments again, the hearsay nature of the evi-
dence and prejudicial misconduct of the
prosecutor. Again we decline to consider
these questions because of the failure to
raise them in timely fashion.[37]

**30.** Miller v. State, 457 S.W.2d at 849–850;
Shultz v. State, 131 Fla. 757, 179 So. 764.
*See also* Brooks v. Texas, 381 F.2d 619,
624–625 (5th Cir. 1967).

**31.** Brooks v. Texas, 381 F.2d at 624.

**32.** Kennedy v. Cardwell, 487 F.2d 101 (6th
Cir. 1973).

**33.** *See* Illinois v. Allen, 397 U.S. 337, 343–
344, 90 S.Ct. 1057, 1060–1061, 25 L.Ed.2d
353, 359 (1970), reh. denied, 398 U.S. 715,
90 S.Ct. 1684, 26 L.Ed.2d 80 (1970).

**34.** Kennedy v. Cardwell, 487 F.2d at 107,
110. *See generally* American Bar Associa-
tion Standards Relating to Trial by Jury,
§ 4.1 and Commentary.

**35.** Taggard v. State, 500 P.2d 238, 243 n. 20
and accompanying text (Alaska 1972).

**36.** *See Id.* and *Id.* at 241 n. 7. Appellant
claims that he did not have the benefit of
*Taggard's* guidelines when the grand jury

proceeding was held on March 17, 1972.
However, his trial counsel did listen to the
recording of the proceedings at a time when
challenge would have been effective. *See*
Crim.R. 6(m).

**37.** We note with disapproval comments made
and solicited by the district attorney before
the grand jury, referring to matters which
would not have been admissible at trial.
The district attorney emphasized Anthony's
prior criminal record, adverted to the re-
sults of polygraph examinations, expressed
his suspicion that Anthony was involved in
·Fairbanks drug traffic, related evidentiary
details of the potential narcotics case being
prepared by his office, introduced specula-
tive testimony that a witness fled to New
Orleans out of fear of Anthony, and stated,
utterly without evidentiary support, that
"[W]e know he's been given contracts [to
kill]. . . ." We cannot condone such
conduct, and we direct the district attorney's
attention to § 3.5(b) of the American Bar

## VI. CONCLUSION

We do not discuss other assignments of error, finding them to be without merit or, if error, to be non-recurring events in a proceeding already remanded for retrial. Due to the failure to give the mandatory cautionary instruction regarding the credibility of accomplice testimony, the judgment of conviction must be reversed.

Reversed and remanded.

ERWIN, Justice, with whom FITZGERALD, Justice, joins (dissenting).

In Bakken v. State, 489 P.2d 120, 127 (Alaska 1971), I dissented from the decision which found plain error in failing to give an instruction under Crim.R. 30(a) which is similar to the claim of plain error in this case.

I adhere to the position I took in *Bakken* and would find that under the facts of this case basic prejudice does not clearly appear and thus the doctrine of plain error is not applicable.

The sole issue in this case, as in *Bakken,* was the credibility of the chief witness. The entire closing argument of both parties was basically directed to either building up or attacking her credibility. The fact that she had been charged with the crime and had entered a plea of guilty was the basic starting point for evaluating her motive for testifying. The standard instructions on evaluation of testimony of witnesses on the basis of bias and interest in the outcome of the case were given. Specific instructions were given to the jury on the need to corroborate her testimony in the event the jury found she was an accomplice.

Under such circumstances I am unable to hold that the failure to give the cautionary instruction that accomplice testimony should be viewed with mistrust constituted such basic and fundamental unfairness to call for the intervention of this court without requiring objection in the trial court.

Association Standards Relating to the Prosecution Function (Approved Draft 1971): "The prosecutor should not make statements

I agree with the decision of the majority as to the other issues raised by appellant and would affirm the decision of the trial court.

or arguments in an effort to influence grand jury action in a manner which would be impermissible at trial before a petit jury."