Terry Lee GRAY, Appellant,

v.

STATE of Alaska, Appellee.

No. 3573.

Supreme Court of Alaska.

June 22, 1979.

Dana Fabe, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

Robert C. Bundy, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

RABINOWITZ, Justice.

Terry Lee Gray was convicted upon his plea of nolo contendere to the crime of robbery. Gray reserved the right to appeal the superior court's denial of his motion to suppress introduction of the contents of an automobile which was searched in the course of a police investigation of the crime. The relevant facts are as follows.

On February 15, 1977, the Anchorage police received a report that a Safeway store had been robbed. Acting on information that the robbery had been committed by three people, two white males and one white female, who had fled the store in a late model brown station wagon, the police stopped a vehicle fitting the description. A woman exited from the driver's side of the car and walked to the rear of the station wagon. The officer ordered the other two subjects out of the vehicle and as one complied the other moved behind the wheel of the station wagon and sped away. The police officer left the two who had gotten out of the vehicle and proceeded to chase the station wagon.[1]

The police pursued the vehicle for two or three miles to the intersection of 15th and H Streets, where it swerved into oncoming traffic and the driver rolled out of the passenger side door into an alley. The driverless vehicle crashed into a nearby residence and came to a stop near the intersection. The officers then subdued the driver[2] and returned to the station wagon.

One of the officers proceeded to secure the station wagon and viewed the interior of the vehicle using a flashlight. In the course of his examination of the interior of the vehicle, he observed a purse, opened it, and found papers with the names Phyllis Gray and Phyllis Straight and an address. The officer returned the papers to the purse, closed it, and left the purse in the vehicle.

Officer Coffey heard the police broadcast of the names and addresses found in the purse. He proceeded to the residence located at the stated address, which was occupied by Leonard Williams. Williams informed Officer Coffey that Phyllis Gray lived at that address and had borrowed his car, a Plymouth station wagon, which matched the description of the suspects' vehicle. Officer Coffey advised Williams of his *Miranda* rights. Williams directed Coffey to the home of his girl friend, who told them where Phyllis Gray was at that time.[3]

Williams and Phyllis Gray were asked individually to sign waiver forms for the search of the car. Phyllis had been advised of her *Miranda* rights and was being questioned at the police station at the time she signed the waiver form. The consent-to-search form was explained to Williams before he signed it, although he testified to threats as well as to a statement by an officer that the car would be searched in any event.[4] At the omnibus hearing, defense counsel moved to suppress the evi-

1. These two were later identified as Terry and Phyllis Gray.

2. The driver was subsequently identified as Terry Gray's younger brother.

3. Meanwhile, Gray's younger brother, who was apprehended with the vehicle, supplied the names of Phyllis and Terry to the police. A subsequent check of the vehicle's registration disclosed the name of a person who, when contacted, indicated that the car had been sold to Leonard Williams.

4. During the search, the officers found coats, a motorcycle helmet, glasses, crutches, a gun and the purse. Investigator Smith listed only those items he planned to place into evidence. He did not list the purse but held it in his office.

dence obtained from the search of the purse. The motion was denied by the superior court and this appeal followed.

Before this court Gray's primary contentions are that the warrantless search of Phyllis Gray's purse was illegal; that the search waivers signed by Phyllis Gray and Leonard Williams were the fruits of the illegal search of Phyllis Gray's purse; and that Leonard Williams' search waiver was not voluntarily given.

It is not contested by the state that Phyllis Gray's purse was searched without a warrant.[5] As noted earlier, the officer probed the interior of the crashed station wagon with his flashlight and noticed a purse on the floor near the front seat. He removed the purse, opened it and searched for identification.

 Since the search was carried out without the benefit of a warrant, the state had the burden of proving that the search comes within one of the exceptions to the general rule that warrantless searches are unlawful.[6] The state contends that the search of Phyllis Gray's purse falls within either of two exceptions to the warrant requirement, namely, the moveable vehicle-destructible evidence exception[7] or the hot pursuit of a fleeing felon exception. We

find it necessary only to discuss the latter exception in detail.

At the time he observed the purse on the floor of the station wagon, the police officer knew that two of the robbery suspects were at large, since he had left them in order to pursue the station wagon. The officer knew that one of the suspects was a woman and surmised that the purse belonged to her. Given this fact situation, the state contends that the officer's search was within the "hot pursuit" exception established in *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).[8] We think there is merit in the state's position.

In *United States v. Robinson*, 174 U.S. App.D.C. 351, 533 F.2d 578, *cert. denied*, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976), the court of appeals upheld a search of the getaway vehicle in a factual context which parallels that presented in the case at bar. The *Robinson* court observed that the term "exigency" required that the search and seizure analysis be shaped by the realities of the situation.[9] In that case, the court noted that it was presented with

a situation in which time was of the essence and it was 'not practicable to secure a warrant.' *Carroll [v. United*

---

**5.** In *Brown v. State*, 372 P.2d 785, 790 (Alaska 1962), *quoting People v. West*, 144 Cal.App.2d 214, 300 P.2d 729, 733 (1956), we defined a search as follows:

A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a 'search.' [footnote omitted]

In *Schraff v. State*, 544 P.2d 834, 839 (Alaska 1975), we said that "riffling through a person's wallet for contents which are unobservable from outside the wallet fits this definition of a search."

**6.** *Schraff v. State*, 544 P.2d 834, 838 (Alaska 1975).

In denying the suppression motion, the superior court judge stated, in part:

I think this is a classic case in which I think the police did a good job. It may not come within any of the rules put down by our supreme court or any other supreme court but common sense, I think, has more rele-

vance in this case than some rule of law trying to get the police to fit into.

**7.** *See generally Clark v. State*, 574 P.2d 1261, 1263 (Alaska 1978), where we stated that the prosecution must establish two conditions before a warrantless search of a vehicle will fit into the destructible evidence exception:

(1) There must be probable cause to believe that the vehicle contains evidence or contraband, and

(2) There must be exigent circumstances justifying conduct of the search without a warrant.

**8.** In *Erickson v. State*, 507 P.2d 508, 515 (Alaska 1973), we commented on the hot pursuit exception in the following manner:

Police may also enter premises without a warrant when they are in hot pursuit of an offender. Once inside, the police may search for the suspect anywhere in the house where he might be hiding.

**9.** *United States v. Robinson*, 174 U.S.App.D.C. 351, 354, 533 F.2d 578, 581, *cert. denied*, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976).

*States],* 267 U.S. [132,] at 153, 45 S.Ct. [280,] at 285, [69 L.Ed. 543] (1925). There was need to proceed as quickly as possible to apprehend the robbers who had used this as the getaway car in an armed bank robbery consummated about an hour prior to the search. There was strong probable cause to believe this was the getaway car. Bank robbers known to have been armed were at large, posing current dangers to the police and other citizens. An immediate search of the car could well produce the information needed to speedily apprehend the culprits. Delay to obtain a warrant would have impeded a promising police investigation and conceivably provided the added time needed by the bank robbers to avoid capture altogether. The case is within the spirit, though not the text, of the 'hot pursuit' exception established in *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed. 782 (1967).[10]

■ Thus, under the *Robinson* court's analysis, the pertinent facts are: the commission of a grave offense; a clear showing of probable cause that the vehicle in question is the getaway car; a reasonable belief that the suspects are armed; a likelihood that the suspects will flee if not speedily apprehended; and a peaceable entry.[11] Of significance is the fact that the *Robinson* court further stated:

> [I]n the case of a car on the street there is both lesser expectation of privacy than in a home, . . . and the entry into a car believed on strong probable cause to be the getaway car is justified, even though the suspect is plainly not now inside, in order to get clues that will aid location and apprehension of the suspect.

. . . . .

Separately, none of these factors is conclusive, but taken together they identify exigent circumstances amply justifying the police in conducting an immediate warrantless search of the getaway car.[12]

■ We think *Robinson* is persuasive authority and adopt its criteria for determination of the "hot pursuit" exception issue in the instant case.[13] Here are present the factors of a grave offense: probable cause to believe that the station wagon was the getaway vehicle; a reasonable belief that the suspects at large were armed; a likelihood that the woman and man left on the sidewalk would flee if not speedily apprehended; and a peaceable entry into the vehicle which culminated in the search of the purse. Based on the foregoing, we hold that the search of Phyllis Gray's purse was not illegal, and that the superior court's denial of Gray's suppression motion should be affirmed.[14]

One issue remains for discussion. Gray contends that Leonard Williams' consent to the search of the station wagon was not voluntary.[15] The state counters with the argument that the issue of the voluntariness of Leonard Williams' consent to search was not preserved for purposes of this appeal. We find merit in this contention.

■ Terry Gray entered a plea of nolo contendere to a charge of robbery. Such plea is a waiver of all nonjurisdictional defects.[16] Nevertheless, in *Deacon v. State,* 575 P.2d 1225, 1227 (Alaska 1978), we said:

> However, we have allowed appeals following pleas of *nolo contendere* or guilty which are expressly conditioned on the

---

**10.** *Id.* at 583 (footnote omitted) (citations omitted).

**11.** *Id.*

**12.** *Id.* 174 U.S.App.D.C. at 357, 533 F.2d at 584.

**13.** The *Robinson* court relied on *United States v. Beck,* 511 F.2d 997, 1001 (6th Cir.), *cert. denied,* 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975), and *United States v. Shye,* 473 F.2d 1061 (6th Cir. 1973).

**14.** Our holding makes it unnecessary to address most of the other arguments advanced by appellant in this appeal.

**15.** No issue has been raised as to Gray's standing to assert this claim. For purposes of our discussion of the issue, we have assumed that Gray possesses the requisite standing.

**16.** *Deacon v. State,* 575 P.2d 1225, 1227 (Alaska 1978); *McKinnon v. State,* 526 P.2d 18, 24 (Alaska 1974); *Cooksey v. State,* 524 P.2d 1251, 1255 (Alaska 1974).

right to appeal from rulings which do not involve jurisdictional issues. We have done this where the prosecutor and the trial court have consented to the conditional nature of the plea . . . . [citation omitted]

Examination of the record in this case has persuaded us that the state is correct in its contention that the issue of the voluntariness of Leonard Williams' consent to the search was not preserved for this appeal.[17] What the record shows is that the reservation of rights on appeal went only to the search of the purse and to the taint accruing to any fruits thereof. Thus, we hold

17. The record discloses that the following colloquy took place at the time appellant entered his plea (Ms. Cutler representing Gray and Mr. Gould representing the state):

Mr. Gould: I—I'd like Ms. Cutler to specify what issue so that it's not so broad that. . .

Ms. Cutler: Right, there were a number and I understand the main issue that will be appealed will be the original search that was made of Phyllis Gray's purse which led to her arrest and to a waiver of a search of a car in which a great deal of evidence was found that the State did intend to use against the defendants if there were to be a trial.

The Court: You mean they (indiscernible) waiver that they purportedly gave. Is that . . . . .

Ms. Cutler: Right, well the—our position was that the waiver was the fruit of the previous illegal . . . . .

The Court: I see.

Ms. Cutler: . . . search and it would be also—I mean it would be—I think that—I do not know at this time if the appeal will be filed but that it—if it were filed, I think it is not an uncommon type of appeal when there's a major search question that might govern a great deal of evidence and it would be obviously . . . . .

Mr. Gould: So the appeal issue . . . . .

Ms. Cutler: . . . up to the supreme court to say whether the error, if any . . .

The Court: But . . . .

Ms. Cutler: . . . were even harmful or not, so . . . . .

The Court: . . . but the appeal rights were being only as to an illegal—claim of illegal search not . . . . .

Ms. Cutler: That's correct and only . . .

The Court: . . . upon some grounds, okay . . . . .

Ms. Cutler: . . . as to that illegal search, not as to—and there were a number of other issues raised but I think the main one had to do with the search of the purse and subsequent fruits.

that the issue of the voluntariness of Leonard Williams' consent to the search of his vehicle is not before us in this appeal.[18]

The superior court's denial of appellant's suppression motion is Affirmed.

Mr. Gould: The illegal search of the purse and any fruits thereof?

Ms. Cutler: Right.

The Court: All right, now that, Mr. Gray, will be—you will have the right to appeal it as I understand it by agreement with the district attorney but the fact of your conviction from any other basis you give up by entering a plea today if you do. Do you understand that?

Mr. Gray: Yes, Your Honor.

18. Assuming arguendo that the issue of the voluntariness of Leonard Williams' consent was properly preserved for appellate review, we are persuaded that the superior court correctly determined that Williams' search waiver was validly given.

Determination of the requisite voluntariness of the disputed consent is a question of fact to be determined from all the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Sleziak v. State*, 454 P.2d 252 (Alaska 1969). On appeal from the trial court's denial of a suppression motion, the evidence taken at the hearing is viewed in the light most favorable to the state. *Anthony v. State*, 93 S.Ct. 2041, 521 P.2d 486, 492 (Alaska 1974). The person giving the consent need not be advised of the right to refuse to allow a search prior to executing a valid consent to search, although the subject's awareness of the right to refuse is a factor in the determination of the voluntariness of the consent. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047, 36 L.Ed.2d at 863, and *Sleziak*, 454 P.2d at 259.

Based on the totality of all the circumstances surrounding Williams' consent, we would conclude that the superior court did not err in holding Williams' consent valid. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).