STATE of Alaska, Petitioner,

v.

Allen SIFTSOFF Jr., Respondent.

No. A–10322.

Court of Appeals of Alaska.

April 30, 2010.

David L. Brower, Assistant Attorney General, Criminal Division Central Office, and Richard A. Svobodny, Acting Attorney General, Juneau, for the Petitioner.

Michael Jude Pate, Assistant Public Defender, Sitka, and Quinlan Steiner, Public Defender, Anchorage, for the Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

COATS, Chief Judge.

Sergeant Daryl Rice of the Sitka Police Department saw a truck traveling at approximately sixty to sixty-five miles per hour in a forty-five mile per hour zone. Sergeant Rice activated his overhead lights and pursued the truck, reaching speeds which he estimated at eighty to eighty-five miles per hour. Sergeant Rice pursued the truck as it slowed down to turn into the gravel road of a trailer park. The truck momentarily fishtailed, kicked up some gravel and dust, and then

continued, apparently under control. Sergeant Rice recognized the driver as Allen Siftsoff Jr.

Siftsoff got out of his truck and started walking toward a trailer that Sergeant Rice knew was Siftsoff's trailer. Sergeant Rice told Siftsoff that he was conducting a traffic stop and told him not to go into the trailer. Siftsoff shook his head and went into the trailer.

After calling for backup and checking to make sure no one else was in the truck, Sergeant Rice knocked on the trailer door, announced his presence, and then proceeded to open the trailer door and enter. In the trailer, he encountered Siftsoff, who was apparently intoxicated. Sergeant Rice took Siftsoff into custody.

A grand jury indicted Siftsoff on three counts: (1) failure to stop at the direction of a peace officer,[1] a class C felony; (2) reckless driving,[2] a misdemeanor; and (3) misdemeanor driving under the influence.[3] Siftsoff filed a motion to suppress, arguing that Sergeant Rice had illegally entered his residence and asking the court to suppress all of the evidence which derived from the entry—the evidence of Siftsoff's intoxication. The State argued that Sergeant Rice's entry into Siftsoff's residence was justified under the doctrine of "hot pursuit."

Following an evidentiary hearing, Superior Court Judge David V. George granted the motion to suppress. Judge George held that, to enter a home, the police must not only have probable cause, but also that "an emergency or exigency must also exist and the emergency or exigency must be of such a nature that it compels entry into a person's home by police before a warrant can be secured." Judge George concluded that the police had not met this standard. He concluded that Sergeant Rice had probable cause "to believe Siftsoff was driving the vehicle [that Sergeant] Rice observed and that Siftsoff remained in the house at the time of [Sergeant] Rice's entry." Judge George stated that there was little danger that Siftsoff would have been able to escape, that he would not have gotten very far if he had attempted to escape, and that Siftsoff would not have been a danger to others. Judge George further stated that there was no indication that Siftsoff was armed or dangerous. Despite finding that Sergeant Rice's pursuit was immediate and continuous, Judge George concluded that "given the specific facts of this case the appropriate action would have been for Sergeant Rice to await the arrival of back-up and obtain a warrant from a neutral judge or magistrate."

*Why we uphold Judge George's decision*

 We conclude that Judge George's order accurately reflects Alaska law. We have reviewed the Alaska cases which discuss the "hot pursuit" exception to the warrant requirement. In reviewing these cases, we find that the decisions do not support allowing the police to enter a residence merely because the police are engaged in an immediate and continuous pursuit of a suspect. The police must have "a compelling need for official action and no time to secure a warrant."[4]

We discuss the cases in chronological order. In *Gray v. State*,[5] the Alaska Supreme Court discussed the "hot pursuit" doctrine. Relying on *United States v. Robinson*,[6] the supreme court stated that "hot pursuit" requires an exigency "in which time [is] of the essence" and it is not practical to obtain a warrant.[7]

In *Anchorage v. Dunkelberger*,[8] an unpublished decision, we decided a case with facts similar to Siftsoff's case. In *Dunkelberger*, a

1. AS 28.35.182(a).

2. AS 28.35.400.

3. AS 28.35.030(a)(2).

4. *Johnson v. State*, 662 P.2d 981, 985 (Alaska App.1983) (citing *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949–50, 56 L.Ed.2d 486 (1978)). *See also Ingram v. State*, 703 P.2d 415, 422 (Alaska App.1985).

5. 596 P.2d 1154 (Alaska 1979).

6. 533 F.2d 578 (D.C.Cir.1976), *cert. denied*, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976).

7. *Gray*, 596 P.2d at 1156–57.

8. Memorandum Opinion and Judgment No. 106 (Alaska App., May 16, 1982), 1982 WL 889220.

police officer was investigating an automobile accident. One of the drivers involved in the accident informed the officer that the other driver had fled from the scene on foot. The officer was able to obtain information about the driver who had fled from the driver's vehicle registration. The driver who had remained at the scene pointed out the apartment to which the other driver had fled. The officer went to the apartment, saw the door was slightly ajar, and saw someone lying on the bed inside. After knocking and identifying himself, the police officer called out Dunkelberger's name. He heard a groan which he interpreted as a response and entered the apartment and arrested Dunkelberger.

Dunkelberger moved to suppress. The Municipality argued that the officer's entry was justified either by the doctrine of hot pursuit or by Dunkelberger's consent. We upheld the trial court's ruling:

> We believe that the trial court could reasonably conclude that the entry into Dunkelberger's apartment was not justified by hot pursuit. This exception clearly contemplates that the entry into a private residence must be necessary because of circumstances of an "emergency nature." There was no showing that there was an emergency which would justify a hot pursuit entry.[9]

In *Johnson*, we generally discussed exigent circumstances, including "hot pursuit." [10] We observed that "a warrantless entry into a person's home to arrest him is *per se* unreasonable and therefore in violation of the state and federal constitutions unless it falls within one of the limited exceptions to the warrant rule." [11] We set out a number of factors for a court to consider to determine whether there were "exigent circumstances" which would justify such an entry. But we summarized the test for whether there were exigent circumstances by stating that exigent circumstances occurred where "there is a compelling need for official action and no time to secure a warrant." [12]

We addressed the doctrine of "hot pursuit" again in *Wilson v. State*.[13] We set out the facts of *Wilson* as follows:

> On the evening of January 14, 1983, state troopers observed Wilson driving erratically. When the troopers attempted to pull Wilson over he refused to stop and nearly lost control of his truck trying to get away. After hitting one of the patrol cars and running a red light, Wilson drove to his home. There he jumped out of his truck and attempted to run into a greenhouse. The troopers followed him and after a scuffle Wilson was subdued and handcuffed.[14]

We held that "the officers were in hot pursuit of Wilson when they entered the greenhouse and therefore did not need a warrant." [15] *Wilson* is distinguishable from Siftsoff's case. It appears from the circumstances of the case that the police had to act promptly to take Wilson into custody.

In 1993, in *Garcia v. State*,[16] an unpublished decision, we again relied on the *Johnson* test to determine whether the police were justified by exigent circumstances to enter a person's home: "in light of the totality of the circumstances was there a compelling need for official action and an insufficient time to obtain a warrant?" [17]

In 1999, in *Anchorage v. Reekie*,[18] an Anchorage police officer developed reasonable suspicion that the driver of a car was intoxi-

9. *Dunkelberger,* 1982 WL 889220 at *1 (internal citations omitted).

10. *Johnson,* 662 P.2d at 984–88.

11. *Id.* at 984.

12. *Id.* at 985–86 (citations omitted).

13. 680 P.2d 1173 (Alaska App.1984).

14. *Id.* at 1177.

15. *Id.* (citation omitted).

16. Memorandum Opinion and Judgment No. 2650 (Alaska App., Mar. 24, 1993), 1993 WL 13156622.

17. *Id.* at *3.

18. Memorandum Opinion and Judgment No. 3998 (Alaska App., Feb. 24, 1999), 1999 WL 91810.

cated. He followed the driver, who parked his car in one of eight parking spaces in an underground garage. The officer stopped his car outside the garage, walked into the garage, and contacted Reekie, who was sitting in his car. The officer arrested Reekie for driving while intoxicated. Reekie "moved to suppress all evidence obtained as a result of the warrantless entry into the garage of his condominium. In the trial court, the Municipality conceded that Reekie had an expectation of privacy in his garage but argued that exigent circumstances justified the entry." [19] The trial judge ordered the evidence suppressed.

We held that probable cause to arrest Reekie would not have justified a warrantless entry into his garage "unless exigent circumstances required an immediate entry. In assessing the need for immediate action, we examine the totality of the circumstances, balancing the nature of the exigency against the intrusiveness of the warrantless entry." [20] We observed that Alaska statutes provide a method to obtain search warrants telephonically. We stated that the "Municipality did not attempt to show that a telephonic warrant would have been ineffectual to prevent the loss of evidence in this case. Nor is there any indication that it was necessary to immediately restrain Reekie to prevent him from escaping or committing further crimes." We upheld the trial court's decision suppressing the evidence.

In this case, Judge George applied the "hot pursuit" analysis that our supreme court originally set out in *Gray*.[21] Although *Gray* dealt with the warrantless entry of a motor vehicle, this court has consistently applied the *Gray* analysis to situations where the police enter a residence in hot pursuit of a suspect.

Under this analysis, police officers in hot pursuit of a suspect may enter a residence without a warrant if (1) the officers have probable cause to believe that the person has committed a serious offense; (2) the officers know or have probable cause to believe that the person is in the residence they are about to enter; and (3) the officers have probable cause to believe that some additional exigent circumstance requires a prompt entry into the residence—for instance, that the person is armed or otherwise presents an imminent threat of harm to the officers or others, or that the person will flee the residence and escape unless the officers make an immediate arrest, or that the person will destroy evidence unless immediately apprehended. Finally, even when these criteria are met, the law requires the police to restrict themselves to a peaceable entry unless the situation reasonably requires the use of force.

Having reviewed the record in this case, we conclude that Judge George appropriately applied this analysis to the facts presented here, and that he properly granted Siftsoff's suppression motion.

The judgment of the superior court is AFFIRMED.

---

**19.** *Reekie,* 1999 WL 91810 at *1.

**20.** *Id.* at *2 (citations omitted).

**21.** 596 P.2d at 1157.