George H. HOHMAN, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. 6779.

Court of Appeals of Alaska.

Sept. 30, 1983.

See also, Alaska, 635 P.2d 1182

Gail Roy Fraties, Jermain, Dunnagan & Owens, Wendell P. Kay, Kay, Christie, Fuld, Saville & Coffey, and Walter Share, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, Judges.

COATS, Judge.

George H. Hohman, Jr., was a member of the Alaska State Senate. He was indicted for bribery in violation of AS 11.56.100[1] and receiving a bribe in violation of AS 11.56.110[2]. The state contended that Senator Hohman agreed to accept money to use his influence to obtain an appropriation for an airplane, a CL–215 "water bomber," which could be used in fighting forest fires. The prosecution also charged Hohman with attempting to bribe Representative Russ Meekins, Jr., to assist him in obtaining the appropriation. Hohman was convicted in a jury trial in Juneau.

---

**1.** AS 11.56.100 states:

*Bribery.* (a) A person commits the crime of bribery if he confers, offers to confer, or agrees to confer a benefit upon a public servant with the intent to influence the public servant's vote, opinion, judgment, action, decision or exercise of discretion in his official capacity.

(b) In a prosecution under this section, it is not a defense that the person sought to be influenced was not qualified to act in the desired way, whether because he had not assumed office, lacked jurisdiction, or for any other reason.

**2.** AS 11.56.110 states:

*Receiving a bribe.* (a) A public servant commits the crime of receiving a bribe if he

(1) solicits a benefit with the intent that his vote, opinion, judgment, action, decision, or exercise of discretion as a public servant will be influenced; or

(2) accepts or agrees to accept a benefit upon an agreement or understanding that his vote, opinion, judgment, action, decision, or exercise of discretion as a public servant will be influenced.

(b) Receiving a bribe is a class B felony.

Judge Douglas Serdahely sentenced Hohman to three years' imprisonment and a $10,000 fine on each count. Judge Serdahely imposed the terms of imprisonment on each count concurrently but made the fines consecutive. Hohman appeals his conviction and sentence to this court. He asks the court to reverse his convictions and order a new trial, or in the alternative, to order concurrent imposition of his fines. We affirm Hohman's conviction and sentence.

## GRAND JURY ISSUES

Hohman contends that the trial court denied him his right to an impartial grand jury indictment, Alaska Const. art. 1, § 8, and his right to due process, U.S. Const. amend. XIV; Alaska Const. art. 1, § 7, by failing to dismiss the indictment because of alleged grand jury prejudice.

On July 15, 1981, Hohman moved to dismiss the indictment. He alleged that the grand jury was prejudiced against him. Two grounds for that alleged prejudice are relevant on appeal. First, an alleged grand juror identified only as "Jimmy" had assertedly told affiant Christian Basler in May of 1980: "I am on the Hohman grand jury. We're going to get that son-of-a-bitch this time." Second, grand juror Tom Wylie was excused from the grand jury after he voluntarily stated in private to then Superior Court Judge Allen Compton that he could not set aside his bias against Hohman. He related that his co-workers all "hated" Hohman and "idolized" his accuser, Meekins. Hohman alleged that Wylie was excused after he had heard thirty-seven witnesses, so that Wylie's bias could have been communicated to and influenced other grand jurors who remained on the jury.

The state responded with a motion to strike Basler's affidavit as inadmissible under Alaska Rule of Evidence 606(b),[3] and opposed Hohman's motion on the ground that there was no evidence of grand juror misconduct.

After hearing oral argument by Hohman and the state on September 1, 1981, the trial court denied Hohman's motion to dismiss and granted the state's motion to strike the affidavit on September 16. The court found that there was "no indication" that grand juror Wylie had communicated his bias to the other grand jurors and noted that the hearing ultimately leading to his dismissal was properly held out of the presence of the other grand jurors. The court granted the state's motion to strike the Basler affidavit, and held in the alternative that even had it not stricken the affidavit, the affidavit failed to establish that the grand jury was prejudiced against Hohman.

### 1. Grand Juror Wylie

■ To overturn an indictment because of grand jury prejudice, a defendant should make a factual showing of prejudice. *In re Perlin*, 589 F.2d 260, 266 (7th Cir. 1978); *United States v. Myers*, 510 F.Supp. 323, 325–26 (E.D.N.Y.1980); *State v. Olkon*, 299 N.W.2d 89, 105 (Minn.1980), *cert. denied*, 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981). In this instance, Hohman clearly has not demonstrated that Wylie's bias affected the other grand jurors. Wylie came forward on July 16, 1980; the grand jury returned the Hohman indictment over nine months later on April 29, 1981. The trial court found that the Wylie incident did not merit dismissal of the indictment because there was "no indication that Wylie communicated his bias to any of the other grand jurors," and because the hearing leading to his excusal was not held

**3.** Alaska Rule of Evidence 606(b) states:

*Inquiry into Validity of Verdict or Indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not be questioned as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any matter or statement upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes

in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

in the presence of the other grand jurors. We conclude that the trial court did not err in reaching this decision.

### 2. Alleged Grand Juror "Jimmy"

█ We conclude it is unnecessary for us to decide whether the trial court properly struck the affidavit of Christian Basler since the affidavit does not appear to justify dismissal of the indictment. First, the hearsay affidavit does not demonstrate that "Jimmy" actually was a grand juror for the Hohman case. Second, assuming that he was, it does not demonstrate that his prejudice was shared by the other grand jurors. Furthermore, the court examined the sealed grand jury votes *in camera*. It found that a "clear and substantial majority" voted to indict on each count. Thus "Jimmy" would have to have infected several other grand jurors with his bias in order to have affected the outcome of the vote on either count of the indictment. We conclude the trial court did not err in refusing to dismiss the indictment on this ground.

█ Hohman also argues that the trial court erred in not dismissing the indictment against him because of an allegedly improper grand jury instruction. Judge Allen Compton had instructed the grand jury in relevant part:

> [Y]ou are admonished that you are not to undertake to determine guilt or innocence. That is the exclusive function of the trial jury. Your duty in all cases is to determine whether there is probable cause to believe that an accused person is guilty of the offense charged. Your duty in each case is merely to determine whether the evidence is such as would, if unexplained or uncontradicted, warrant a conviction by the trial jury, and leave the determination of guilt, or innocence, to that body.

Hohman moved to dismiss the indictment based on this instruction. He argued that it could have misled the grand jury into believing that the trial jury's standard for determining guilt was "probable cause" rather than proof beyond a reasonable doubt. The state opposed the motion, arguing that (1) the instruction was not in error, and (2) that even if it was erroneous it did not appreciably affect the outcome of the grand jury's deliberations. Judge Serdahely denied the motion. He held that the instruction's "probable cause" sentence, when read in context, did not deviate so substantially from language previously used by the Alaska Supreme Court so as to make the instruction erroneous.

Alaska Rule of Criminal Procedure 6(q) states in relevant part: "The grand jury shall find an indictment when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant." *Tookak v. State*, 648 P.2d 1018, 1020 n. 1 (Alaska App.1982). The contested grand jury instruction embodies this standard. Although the grand jury was also told that they were to determine whether there was probable cause to believe that the accused was guilty of the offense charged, probable cause was defined in the instruction itself by the language set forth in Criminal Rule 6(q). We therefore conclude that the grand jury was not improperly instructed.

## ADMISSION OF TELEPHONE RECORDS

### 1. Relevancy

█ During the trial, the state presented records which purported to show that telephone calls had been made. Hohman twice objected to introduction of this type of evidence.

On December 4, 1981, Hohman moved for a protective order "precluding the introduction of evidence by the State relating to telephone records of various individuals, on the ground that such records are not relevant to the trial of this cause and further that such records are inadmissible hearsay evidence." The state opposed the motion. After hearing substantial oral argument on December 7, the court denied the motion on December 8. The court held that the records were relevant, and that Hohman's objections went to the weight of the evidence

(which he could argue at trial) rather than to its admissibility.

Alaska Rule of Evidence 401 states:

*Definition of Relevant Evidence.* Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The trial court's decision to admit the telephone records "will not be overturned on appeal in the absence of an abuse of discretion." *Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980). Hohman claims that the records to which he objects were irrelevant and permitted jury speculation because (1) the records themselves did not prove who made or received the calls, (2) many of the calls were to or from the Hohman office where many people had access to the office telephones, and (3) the telephone records did not indicate that conversations about illegal activity took place.

We conclude that evidence of the fact that the phone calls were made was relevant. The state alleged that a group of interested persons was working in concert to attempt to secure passage of the CL–215 appropriations, and the state was using the telephone records as circumstantial evidence of their activities and the frequency of their contacts. The calls appear to either involve one allegedly interested party calling another, involve an allegedly interested party calling a party who could logically give or receive information about the CL–215 appropriation, or help establish the location of an allegedly interested party at a certain time. As the trial court noted, Hohman was free to attack the probative value of the records at trial. The danger of unfair prejudice from admission of the telephone record evidence appears to be minimal. A.R.E. 403. We find the trial court did not abuse its discretion in ruling that the telephone records were relevant.

### 2. Privacy

■ On December 21, 1981, near the end of the state's case, Hohman moved to strike the telephone record evidence based on his right of privacy under the state constitution. Alaska Const. art. 1, § 22. In arguing to strike the evidence, Hohman noted that the prosecution had acquired the records pursuant to grand jury subpoena rather than by a warrant. After hearing extensive oral argument on December 22, 1981, the court took the motion under advisement. The court asked the parties for additional argument on whether Hohman had waived the privacy motion by failing to raise it at the September 1–2, omnibus hearing. On December 23, the court heard argument on the waiver issue. Judge Serdahely then ruled that Hohman should have made the privacy motion at the omnibus hearing, and that Hohman thus had waived the motion under Criminal Rule 16(f)(3).

Hohman's motion was to strike the evidence from the record because by the time of Hohman's motion the state had already introduced much of this evidence. Criminal Rule 16(f)(3) states:

*Pre-Trial Motions and Requests—Effect of Failure to Raise at Hearing.* All motions and other requests made prior to trial should ordinarily be reserved for and presented at the omnibus hearing unless the court otherwise directs. Subject to constitutional limitations failure to raise at the omnibus hearing any pre-trial error or issue, other than the failure of the indictment to show jurisdiction or to charge an offense, constitutes waiver of such error or issue unless the party concerned does not then possess the information necessary to raise it.

We conclude that the trial judge did not err in applying Criminal Rule 16(f)(3) to hold that Hohman had forfeited his right to raise the privacy issue by not bringing the motion until the middle of trial. Hohman does not contend that his motion was based upon very recent authority which could easily be overlooked. The cases that Hohman cited in support of his motion were issued several years before the omnibus hearing. Hohman was represented by experienced and able attorneys who filed numerous pretrial motions. Hohman does not contend that the state concealed the fact that it

obtained the telephone records by grand jury subpoena. Furthermore, by the time Hohman raised this motion, many of the phone records had already been admitted. It is also reasonable to assume that the prosecution relied on presenting evidence of the telephone records in presenting its case to the jury. We find no error.[4]

### IMMUNITY INSTRUCTION

██ The trial court gave, over Hohman's objection, the following jury instruction:

> One who testifies under a grant of immunity with a promise from the government that he will not be prosecuted is a competent witness. His testimony may be received in evidence and considered by the jury even though not corroborated or supported by other evidence.

> The grant is a grant of full immunity and under Alaska law bars prosecution for or on account of any transaction or matter concerning which the witness gives responsive testimony at this trial. A limitation on the immunity granted, however, is that the witness has no immunity for any perjury he commits while testifying.

> *Such testimony should be examined by you with greater care than the testimony of an ordinary witness.* You may give the testimony of the immunized witness such weight as you feel it deserves. [Emphasis added.]

Michael DeMan and Sigurd Larsen were immunized witnesses, and they testified in favor of Hohman. Hohman argues that the emphasized sentence of the instruction denied him the constitutional guarantees of due process of law and an impartial jury.

He claims that the instruction constitutes error of constitutional magnitude and entitles him to a new trial.

Several federal cases hold that it is not error to give a cautionary instruction where an accomplice testifies in favor of the defendant. The leading case is *United States v. Nolte,* 440 F.2d 1124 (5th Cir.), *cert. denied,* 404 U.S. 862, 92 S.Ct. 49, 30 L.Ed.2d 106 (1971). *Nolte* analyzed the policy behind the cautionary instruction, and concluded that "when one accomplice testifies for another, there is always the chance that each will try to 'swear the other out of the charge.'" *Id.* at 1126 (*quoting Washington v. Texas,* 388 U.S. 14, 21, 87 S.Ct. 1920, 1924, 18 L.Ed.2d 1019, 1024 (1967)). The Court found the instruction was "not a matter requiring constitutional scrutiny," and it lies within the trial court's discretion to instruct the jury to accept an accomplices' testimony with caution. *Id.* The same result was reached in *United States v. Urdiales,* 523 F.2d 1245, 1248 (5th Cir.1975), *cert. denied,* 426 U.S. 920, 96 S.Ct. 2625, 49 L.Ed.2d 373 (1976); *United States v. Simmons,* 503 F.2d 831, 837 (5th Cir.1974); *United States v. Marrone,* 502 F.Supp. 983, 990–99 (E.D.Pa.1980), *aff'd. mem.,* 672 F.2d 904 (3d Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1433, 71 L.Ed.2d 652 (1982); and *United States v. Mitchell,* 385 F.Supp. 1190, 1193 (D.C.1974), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *see* 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 17.06 (3d ed. 1977). Hohman does not cite, nor could we find, authority for reversing a conviction when an immunized witness or an accomplice provided exculpatory testimony and

---

**4.** 2 ABA Standards for Criminal Justice § 11–5.3(d) (2d ed. 1980), states: "Failure to raise any prior-to-trial error or issue at the [pretrial] hearing constitutes waiver of such error or issue unless the party establishes just cause for the delay." *See* Fed.R.Crim.P. 12(f). The commentary to that section of the standards states that just cause is easily established where the defendant could not have raised the issue at the pretrial hearing, but that it is more difficult to establish just cause where the issue was merely inadvertently overlooked. *See, e.g., United*

States v. Davis,* 663 F.2d 824, 831 (9th Cir. 1981) (motion to suppress tax records made near end of government's case-in-chief held waived when defendant failed to provide legitimate justification for failure to object prior to trial). *Cf. Moreau v. State,* 588 P.2d 275, 280 (Alaska 1978) (exclusionary rule is not designed to protect against conviction of innocent, so justice does not generally require recognition of exclusionary rule issues as plain error).

the trial court gave a cautionary instruction.

We conclude that the trial court did not abuse its discretion in giving the instruction. It appears obvious that the jury would examine the testimony of DeMan and Larsen with caution and it seems unlikely that the instruction would cause the jury to examine the testimony of those witnesses differently than they would ordinarily. The state presented evidence from which the jury could conclude that DeMan and Larsen were accomplices with Hohman in the bribery scheme. Both DeMan and Larsen had been charged in connection with that scheme and DeMan had formerly been convicted of perjury in connection with allegedly lying about his involvement. The fact that DeMan and Larsen had been immunized and were alleged accomplices was reason to regard their testimony with caution. Still we believe that a better practice would have been to indicate to the jury in the general instruction on the credibility of witnesses that whether a witness had been granted immunity from prosecution was only one of many factors which the jury could consider in weighing the testimony of these witnesses.[5] Another practice which we would prefer to the instruction given in this case would be not to give any special instruction on how the testimony of an immunized witness would be regarded. The jury would then presumably apply the general instruction on the credibility of witnesses along with their common sense in treating this testimony. We prefer both of these practices because they seem to better

avoid any possible danger that the jury will conclude that the trial judge is expressing an opinion on the weight of the evidence. However we do not find that the instruction which was used by the trial court was likely to have any undue influence on the jury in their deliberations. We therefore find the trial court did not abuse its discretion in giving this instruction.

## INTENT INSTRUCTION

■ Jury Instruction No. 16, identical to Alaska Pattern Jury Instruction (Criminal) 1.44 (1980), was given as follows:

Intent may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence of what a defendant does or fails to do, there can be no eyewitnesses to the state of mind with which the acts were done or omitted. But what a defendant does or fails to do may indicate intent or lack of intent.

It is reasonable to infer that a person ordinarily *intends the natural and probable consequences of acts he knowingly does or knowingly omits.* Any such reasonable inference is entitled to be considered by the jury in determining whether or not the prosecution has proved beyond a reasonable doubt that the defendant possessed the required intent.

In determining issues of intent, the jury is entitled to consider any statements made and acts done or omitted by

---

**5.** Alaska Pattern Jury Instructions (Criminal) 1.06 (1980), which Judge Serdahely gave to the jury in Hohman's trial, reads in part as follows:

Every person who testifies under oath is a witness. You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. In deciding whether to believe a witness or how much weight to give a witness's testimony, you should consider anything that reasonably helps you to judge the testimony. Among the things you should consider are the following:

1. The witness's attitude, behavior and appearance on the stand and the way the witness testifies;
2. The witness's intelligence;

3. The witness's opportunity and ability to see or hear the things about which he testifies;
4. The accuracy of the witness's memory;
5. Any motive of the witness not to tell the truth;
6. Any interest that the witness has in the outcome of the case;
7. Any bias of the witness;
8. Any opinion or reputation evidence about the witness's truthfulness;
9. [Any prior criminal convictions of the witness relating to honesty or veracity];
10. The consistency of the witness's testimony and whether it is supported or contradicted by other evidence.

the accused, and all facts circumstances in evidence which may aid determination of state of mind. [Emphasis added.]

Hohman did not object to this instruction at trial, but contends on appeal that it denied him due process and the right to a fair and impartial jury, that it constitutes plain error, and that a new trial is mandated. *See Menard v. State,* 578 P.2d 966, 968–70 (Alaska 1978).

We have formerly held that it was not plain error to give an instruction similar to this in *Doisher v. State,* 632 P.2d 242, 258 (Alaska App.1981), *rev'd on other grounds,* 658 P.2d 119 (Alaska 1983). We note that, as in *Doisher,* this case was not one which turned on whether Hohman had criminal intent. We conclude that giving this intent instruction was not plain error. *Cf. Connecticut v. Johnson,* —— U.S. ——, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983).

### THE EXAMINATION OF SENATOR WILLIAM SUMNER

■ Senator William Sumner was called as a defense witness. On direct examination Sumner testified that he had several conversations with Representative Meekins, Hohman's chief accuser and the man who testified that Hohman offered him a bribe to assist Hohman in obtaining the appropriation for the CL–215 airplane. According to Sumner, he was a friend of both Hohman and Meekins. He stated that Meekins had admitted to him that the statements which Hohman made to Meekins in which he allegedly offered Meekins a bribe could be interpreted in more than one way. Sumner also stated that Meekins said that other members of the house had been "laying moral trips on him," apparently encouraging him to cooperate in prosecuting Hohman. Sumner also brought out on direct

examination that Hohman had a great deal of power to affect appropriations. The point of this testimony was apparently to attempt to show that Hohman had so much power it would be unnecessary for him to bribe Meekins to help him if he wanted to obtain an appropriation for the CL–215.

On cross examination, the state brought out Sumner's personal belief that both Meekins and Hohman were telling the truth and that there had been a misunderstanding about whether Hohman offered Meekins a bribe. Sumner stated that he thought Meekins could have been "assisted" by other members of the house so that he misinterpreted what Hohman intended to say. On redirect the following examination occurred:

Q: And when you suspected that people assisted Representative Meekins in coming to the conclusion that he had been—about what he had been told by Senator Hohman, in your experience would this man, Representative Meekins, in spite of your friendship with him, is he the sort of man that can be assisted to those conclusions?

A: I—I have said that at that particular time in the legislature, we get very tired, and it is possible that we are more easily persuaded when you're tired and it's—it is fatiguing. I'm telling you, it is terribly tiring. It is entirely possible that one is more susceptible to persuasion at that time than at other times. I said that.

Q: What about his own particular susceptibility to pressure?

MR. PETUMENOS: I'll object at this point. The witness is not I think permitted to give [this] kind of opinion. [Evidence Rule] 608 [6] would now come into play.

---

**6.** Alaska Rule of Evidence 608 states:

*Evidence of Character and Conduct of Witness.*
 (a) *Opinion and Reputation Evidence of Character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness; and (2) evidence for truthful character is ad-

missible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
 (b) *Specific Instances of Conduct.* If a witness testifies concerning the character for truthfulness or untruthfulness of a previous witness, the specific instances of conduct probative of the truthfulness or untruthfulness of the previous witness, may be inquired into on

MR. FRATIES: I don't agree. I'll accept the ruling from the court.

MR. PETUMENOS: Well, if I could finish? 608 would come into play certainly, and that would not be able to be elicited were it—were the witness to come on the stand directly, and we've gone over that in some detail and now to elicit opinions beyond the scope of 608 in this fashion is coming through the back door.

MR. FRATIES: Now that he's finished, I'll accept the ruling from the court, Your Honor.

THE COURT: Thank you. The objection [is] sustained.

Hohman argues on appeal that the trial court's limitation on his examination of Senator Sumner violated his constitutional rights to confrontation and compulsory process and the right to present his theory of the case. Hohman argues on appeal that he wanted to establish the theory that Meekins was susceptible to pressure and had been pressured into testifying against Hohman.

We conclude that, although the evidence appears to have been admissible if the theory which Hohman has argued in this court had been argued in the trial court, on this record the alleged error has not been preserved. Evidence Rule 103 provides in part:

*Rulings on Evidence.*

(a) *Effect of Erroneous Ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

. . . .

(2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Hohman did not make an offer of proof as to what he would try to establish in proving Meekins' susceptibility to pressure. It does not appear obvious from the context of the questions what Hohman's counsel was trying to establish. The prosecutor apparently thought that the evidence was offered to impeach Meekins' character for truth and veracity under Evidence Rule 608.[7] Evidence that Meekins had a character trait, that his recollection of events might be influenced by pressure, does not go to Meekins' character for truth and veracity under Evidence Rule 608. Hohman's counsel never argued for admissibility of the evidence under any other theory of evidence. Furthermore, counsel's actions would certainly have led the trial court to conclude that the ruling was of little importance. Hohman's counsel not only did not argue that he was not attempting to admit the evidence under Evidence Rule 608; he also stated "I'll accept the ruling from the court." There is certainly an implication that counsel did not care which way the court ruled and that he had established what he needed to establish. Counsel had already established the fact that Sumner felt that Meekins could have been assisted in reaching his interpretation of his conversations with Hohman that Hohman had offered a bribe. Counsel had also established that everyone, presumably including Meekins, was under a lot of pressure and susceptible to persuasion at the end of the

cross-examination. Evidence of other specific instances of the conduct of a witness offered for the purpose of attacking or supporting that witness' credibility is inadmissible unless such evidence is explicitly made admissible by these rules, by other rules promulgated by the Alaska Supreme Court or by enactment of the Alaska Legislature.

(c) *Admissibility.* Before a witness may be impeached by inquiry into specific instances of conduct pursuant to subdivision (b), the court shall be advised of the specific instances of conduct upon which inquiry is sought and shall

· rule if the witness may be impeached by such inquiry by weighing its probative value against its prejudicial effect.

7. The record establishes that the court and attorneys for the state and Hohman were very familiar with Evidence Rule 608 because they discussed it in regard to various character witnesses who testified in the trial. It is therefore clear that the court and counsel knew, on this record, the nature of the prosecutor's objection.

legislative session. Since no offer of proof was made and counsel seemed willing to accept the court's ruling on the question, whatever it might be, the court could reasonably assume that the answer would not be particularly relevant or helpful to Hohman's case. This impression is further buttressed by the fact that this theory of susceptibility to pressure came up in *redirect* examination. It certainly did not appear to the trial court that a primary reason to call Sumner was to establish that Meekins was particularly susceptible to pressure. We therefore find that Hohman did not properly preserve his objection under Evidence Rule 103.

## CROSS–EXAMINATION OF CHARACTER WITNESSES

Before Hohman presented his character witnesses, the court heard argument on the scope of cross-examination that it should permit the state. The prosecutor stated that he wanted to cross-examine on Hohman's allegedly improper oral granting of state consulting contracts, his involvement in a grand jury investigation of a Bethel broadcasting company, and his involvement in a student travel program that allegedly was misused in order to benefit his constituents. Over objection by the defense, the court ruled that the state could cross-examine in these areas.

Witness Dianne Carpenter testified on direct examination in relevant part:

Q: Do you have an opinion as to whether George Hohman is an honest and truthful man?

A: I feel that ...

Q: First, do you have an opinion?

A: Yes, I do, I have worked with Senator Hohman over a number of years and have known him personally as well and I feel that—that his word is really—really valid. And I have never had any reason to doubt his integrity or his honesty.

On cross-examination, the state asked Carpenter (1) if Hohman had a reputation

"as a supreme bluffer" in poker, (2) about Hohman's approval of $10,000 worth of "open-ended out-of-state airplane tickets for himself and [two] members of his own staff," (3) about Hohman's allegedly improper last-minute authorization of state consulting contracts, and (4) about Hohman's involvement in allegedly misusing the "Adventure Based Education Program" to send Bethel residents to Europe. Hohman argues on appeal that the cross-examination was irrelevant to establish his character for truthfulness under Evidence Rule 608 [8] and that, even assuming that the evidence was admissible, the prejudicial effect of the information was greater than the probative value. A.R.E. 403. Hohman argues in essence that the trial judge allowed the trial to become an attack on Hohman's controversial legislative record rather than keeping the trial focused on whether Hohman was involved in the bribery charges.

We acknowledge that the issue of the proper cross-examination of Hohman's character witnesses has caused this court some difficulty. The possibility that cross-examination of a character witness may result in an unfair broadside attack when alleged *prior* wrongs of a defendant are paraded before the jury is a matter for real concern. The leading case in the area of character witness evidence is *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). In that case Justice Jackson, writing for the majority, summarized this area of law as follows:

> We concur in the general opinion of courts, textwriters and the profession that much of this law is archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counter-privilege to the other. But somehow it has proved a workable even if clumsy system when moderated by discretionary controls in the hands of a wise and strong trial court.

*Id.* at 486, 69 S.Ct. at 223, 93 L.Ed. at 179.

Justice Jackson emphasized the great possibility for unfair prejudice which might

---

**8.** Alaska Rule of Evidence 608 is set out at *supra* n. 6.

result from poorly controlled examination of character witnesses, stating: "At its worst it opens a veritable Pandora's box of irresponsible gossip, innuendo, and smear." *Id.* at 480, 69 S.Ct. at 220, 93 L.Ed. at 176. Yet he also emphasized that the primary duty for controlling the cross-examination of character witnesses lies with the trial court:

> Both propriety and abuse of hearsay reputation testimony, on both sides, depend on numerous and subtle considerations, difficult to detect or appraise from a cold record, and therefore rarely and only on clear showing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject.

*Id.* (footnote omitted).

 When Hohman put on witnesses who testified to his character for truthfulness, the prosecution was entitled to examine those witnesses about specific instances of conduct relating to truthfulness. A.R.E. 608(b).[9] The prosecution was entitled to cross-examine those witnesses about whether they had considered allegations of misconduct by Hohman which related to his character for truth and veracity.[10]

 We have reviewed the testimony of the various character witnesses called by Hohman, particularly the cross-examination, in deciding this issue. The first question before us is one of relevance. We

---

**9.** The state argues that Hohman's character witnesses also testified to Hohman's character for integrity, thereby opening up a broader scope of cross-examination. We have assumed, without deciding, that Hohman did adequately restrict the testimony of his character witnesses to his reputation for truth and veracity.

**10.** The state does not have to prove that the allegations are true, since the purpose of the inquiry is to ascertain whether the witness considered the allegations in forming his or her opinion about Hohman's truth and veracity. An illustration of this method of cross-examination is described in *United States v. Apfelbaum*, 621 F.2d 62, 65 (3d Cir.1980):

> The government stated that if Apfelbaum called his character witnesses, it intended to cross-examine these witnesses by inquiring into their familiarity with a newspaper article appearing in the Philadelphia Inquirer on July 11, 1975. The article described charges

agree that Hohman's poker playing abilities are not relevant to his character for truthfulness. However, the possible prejudice from this line of questioning is so limited that we conclude that any error in allowing this questioning was harmless.

We do not believe that the trial court erred in allowing the prosecution to inquire of Carpenter about the other specific instances where Hohman allegedly used his position in a manner which could be interpreted as self-dealing and involved possible misuse of funds. These incidents arguably reflect on Hohman's honesty, even if that trait is narrowly construed as relating to truthfulness. A possible interpretation of those incidents would be that Hohman had not conducted himself in an open and forthright manner to the point where it might call into question his character for truthfulness.

We have also reviewed the record to determine whether the potential prejudice of these incidents outweighed the probative value. This is frequently a difficult question because of the potential for abuse in cross-examination. As we have formerly indicated, in reviewing the record we will only reverse in the event there is a clear showing of an abuse of discretion. We do not find such an abuse of discretion in this case. In reviewing the record, we do not

> made by an assistant district attorney in Philadelphia that Apfelbaum, administrative assistant to the Philadelphia District Attorney, had attempted to "fix" a case, and recounts Apfelbaum's flat denials of these allegations.
> . . . .
> Rulings on the permissible scope of cross-examination in this context are within the sound discretion of the district court, and may only be reversed for abuse of that discretion. We find no abuse here. Apfelbaum offered the character witnesses to testify to his reputation for truth and veracity. The article, to the extent that it relates Apfelbaum's denial of a public accusation, concerns an event that implicates his reputation for veracity. Thus, the familiarity of these witnesses with the substance of this article is relevant to their qualifications to testify on Apfelbaum's reputation for truth and veracity.

have the impression that the introduction of the potentially prejudicial material had great impact on the case or unfairly forced Hohman to defend himself on the charges of misconduct. Cross-examination by the prosecution on these incidents does not appear to us to have been unnecessarily emphasized or drawn out. Hohman's attorneys were able to effectively present their thesis that Hohman's conduct in these incidents was perfectly legal and did not reflect in any way on his integrity. Particularly effective, in our opinion, was the testimony of Senator Bill Ray from Juneau who appeared as a character witness for Hohman. Ray was obviously familiar with the incidents of alleged misconduct by Hohman and testified that he had high regard for Hohman's credibility and integrity. We conclude, from a review of the testimony, that the cross-examination of Hohman's character witnesses was not unfairly prejudicial.[11]

## CONSECUTIVE IMPOSITION OF FINES

 Hohman next claims that the consecutive imposition of his fines violated the double jeopardy prohibition of *Whitton v. State,* 479 P.2d 302, 310 (Alaska 1970), where the court stated: "We hold that Alaska's constitutional prohibition against double jeopardy prevents one from receiving multiple punishment for the same offense." Hohman argues his two convictions are for the same offense and therefore consecutive fines violate double jeopardy.

We find that Hohman's two convictions are not the same for double jeopardy purposes and Judge Serdahely did not err in imposing consecutive fines. Count I charged that Hohman offered money to Meekins, with the intent to influence his vote, opinion, judgment, action, decision, or exercise of discretion in his capacity as a public official. Count II charged conduct distinct from Count I, that Hohman agreed to accept money, with the separate intent that the money would influence his own vote, opinion, judgment, action, decision, or exercise of discretion. Although the offenses occurred during the same general time span, they are distinct enough in conduct and intent to justify cumulative fines. *See Nielsen v. State,* 627 P.2d 1077, 1080 (Alaska 1981) (defendant shot victim in leg, then ordered him into car and "a short time later" cut his throat with a knife; imposition of four-year sentence for assault with a dangerous weapon and consecutive twenty-year sentence for assault with intent to wound or maim did not violate double jeopardy).

 We also believe that Judge Serdahely gave sufficient reasons to support the imposition of the fines. Hohman was convicted of both offering a bribe and agreeing to receive a bribe. Judge Serdahely stated, in a supplemental memorandum, that the reason for imposing a substantial fine was to "eliminate any monetary incentive for the commission of the crimes of bribery, and to eliminate whatever monetary gain the defendant stood to realize, had the bribery scheme been completed." We believe that this reasoning justifies the fines imposed.

The judgment of the superior court is AFFIRMED.

---

11. In *United States v. Apfelbaum,* 621 F.2d at 65 n. 3, the court set out certain safeguards on character evidence testimony from the *Michelson* case as follows:

> The safeguards emphasized in that case included (1) clearly instructing the jury that they were to consider any incidents brought out in cross-examination only for purposes of assessing the witness' standard of opinion of the character trait at issue of the defendant, (2) ascertaining out of the presence of the jury "that counsel was not merely taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box" and (3) ensuring that the questioning was relevant to the character trait asserted. (Citations omitted.) In the instant case we believe the state, through its offer of proof, adequately established that its questioning of the character witnesses was in good faith. We conclude that the state adequately showed the relevance of the questions asked. In arriving at our decision on this issue we have considered the fact that the jury apparently was not given a cautionary instruction about how to regard the incidents as well as the fact that no cautionary instruction was requested by Hohman.