NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

LATRELL DONEL WYNNE,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11540
Trial Court No. 3AN-11-6228 CR

O P I N I O N

No. 2615 — August 31, 2018

Appeal from the Superior Court, Third Judicial District, Anchorage, Philip R. Volland, Judge.

Appearances: Ben Crittenden, Attorney at Law, Anchorage, under contract with the Office of Public Advocacy, for the Appellant. Kenneth M. Rosenstein, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge. [*]

Judge MANNHEIMER.

---

[*]    Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Under Alaska's pattern jury instructions, jurors are told that they should distrust the testimony of any accomplice to the charged crime. [1]

The present case involves two co-defendants — Troy Williams and Latrell Donel Wynne — who were charged with jointly committing two robberies. (The two men were charged with robbing the occupant of one apartment, and soon thereafter robbing the occupants of a second apartment in the same building).

Williams and Wynne were tried together. Williams decided not to testify, but Wynne took the stand at trial. In his testimony, Wynne asserted that he had no connection to any robbery committed in the second apartment. With regard to the robbery committed in the first apartment, Wynne asserted that he had been an innocent bystander — that his co-defendant Williams was solely responsible for that robbery.

At the end of the trial, at the request of Williams's attorney, the trial judge gave Criminal Pattern Jury Instruction 1.21 — an instruction which told the jurors that, if they concluded that Wynne was likely a participant in the robbery, then they should view Wynne's testimony with distrust.

The jury acquitted both Wynne and Williams of the robbery committed in the second apartment. With regard to the robbery committed in the first apartment, the

---

[1] *See* Alaska Criminal Pattern Jury Instructions 1.20 and 1.21. Both of these pattern instructions tell the jurors that the testimony of any "participant" in the charged crime should be viewed with distrust. The two instructions then clarify: "This does not mean that you may arbitrarily disregard such testimony, but you should give it the weight you consider appropriate after examining it with care and caution and in light of all the evidence."

We note that these instructions use the word "participant" rather than the word "accomplice". "Participant" is conceivably broader than "accomplice", because the word "participant" potentially includes people who did not act with a culpable mental state, and who therefore could not be held criminally liable for the events they participated in. The present case does not require us to inquire further into this matter.

jury found Wynne guilty of this crime, but the jury was unable to reach a verdict with respect to Williams.

Wynne (the sole defendant convicted of anything at the trial) now appeals his robbery conviction. He argues that the trial judge committed error when the judge instructed the jurors to evaluate whether Wynne was a participant in the robbery, and to view Wynne's testimony with distrust if they found that he was a participant.

For the reasons explained in this opinion, we hold that the "distrust the testimony of an accomplice" jury instruction should not have been given under the circumstances of this case. But though we conclude that it was error to give this instruction, we conclude that the error was harmless under the facts of Wynne's case. We therefore affirm Wynne's conviction.

*The rationale of the jury instruction on distrusting the testimony of an accomplice*

The jury instruction directing jurors to view the testimony of an accomplice with distrust has been a feature of Alaska law since territorial days. This instruction was mandatory from 1887 until 1975.[2] Then, in 1975 (as we shall explain), our supreme

---

[2]  When Congress first established a civil government for Alaska in 1884, Congress decreed that the then-current laws of Oregon would apply in Alaska. *See* 23 United States Statutes 24, ch. 53, § 7 (1884). At that time, Oregon law mandated that juries be instructed that the testimony of an accomplice should be viewed with distrust. *See* Hill's Annotated Laws of Oregon, § 845 (1887). This provision was included in Alaska's first compilation of laws, the Carter Code of 1900. *See* Thomas H. Carter, *The Laws of Alaska* (1900), § 673. It was carried forward in every subsequent compilation of Alaska law until statehood. *See* 1913 Compiled Laws of Alaska, § 1505; 1933 Compiled Laws of Alaska, § 4263, and 1949 Alaska Compiled Laws Annotated, § 58-5-1. After statehood, this provision was no longer included in the Alaska Statutes. Instead, it was incorporated in the Alaska Criminal Rules.

court amended Alaska Criminal Rule 30(b) so that judges were authorized to give this instruction, but they were no longer required to do so.

The rationale behind this jury instruction is explained by Dean John Henry Wigmore in his treatise on evidence, *Evidence in Trials at Common Law* (Chadbourn revision, 1978), § 2057, Vol. 7, page 417:

> The reasons which have led to this distrust of an accomplice's testimony are not far to seek. He may expect to save himself from punishment by procuring the conviction of others. It is true that he is also charging himself, and in that respect he has burned his ships. But he can escape the consequences of this acknowledgement, if the prosecuting authorities choose to release him, provided he helps them to secure the conviction of his partner in crime[.] ...

However, Wigmore also points out the limit of this rationale:

> The essential element, however, it must be remembered, is this supposed promise or expectation of conditional clemency. If that is lacking, the whole basis of distrust fails.

*Ibid.*

*The modern history of this jury instruction in Alaska*

From the time of statehood until 1975, whenever an accomplice to the crime testified at a defendant's trial, Alaska Criminal Rule 30(b) required the trial judge to instruct the jury that the testimony of an accomplice should be viewed with

distrust. [3] This duty was imposed on trial judges regardless of whether either party asked for the instruction.

But this aspect of the law began to change in 1974, when the Alaska Supreme Court decided *Anthony v. State*, 521 P.2d 486 (Alaska 1974).

The defendant in *Anthony* was charged with committing a murder for hire. Verna Hofhines, the woman who allegedly hired Anthony to kill her husband, ultimately reached a plea agreement with the State: she pleaded guilty to murder, and she testified against Anthony at his trial. [4]

Anthony's jury received the standard jury instructions on weighing the credibility of witnesses — *i.e.*, instructions embodying the principle that jurors are entitled to consider a witness's potential bias and their potential interest in the outcome of the case. [5]  And Anthony's attorney apparently thought that these standard jury instructions gave him sufficient scope to attack Hofhines's testimony — because Anthony's attorney did not ask the trial judge to give a "distrust the testimony of an accomplice" instruction. [6]  But on appeal, Anthony argued that his conviction should be reversed because Criminal Rule 30(b) made the "distrust the testimony of an accomplice" instruction mandatory, even when the instruction was not requested. [7]

---

[3]   Before 1975, Criminal Rule 30(b)(2) provided that, "whether or not requested to do so, [the court] shall give the following basic instructions on all proper occasions: ... (2) That the testimony of an accomplice ought to be viewed with distrust ... ."  (Quoted in *Anthony v. State*, 521 P.2d 486, 488 n. 2 (Alaska 1974).)

[4]   *Anthony*, 521 P.2d at 488.

[5]   *Id.* at 497.

[6]   *Id.* at 490.

[7]   *Ibid.*

In a three-to-two decision, the supreme court concluded that the trial judge's failure to give a "distrust the testimony of an accomplice" instruction required reversal of Anthony's conviction.

The *Anthony* majority acknowledged that Anthony's attorney had focused the defense case on attacking Hofhines's credibility. But the majority declared that even if the defense attorney's cross-examination and closing argument had been "devastating", the purpose of Criminal Rule 30(b) would not have been fulfilled. The majority stated that the purpose of the rule was to emphasize to the jurors that distrust of an accomplice's truthfulness was not merely something that could be argued by an advocate; rather, it was a rule of law "cloak[ed] [with] the judge's impartial authority". *Id.*, 521 P.2d at 491.

The two dissenting members of the court, on the other hand, rejected the majority's premise that the law required a trial judge to set a judicial imprimatur on the concept that an accomplice's testimony should be viewed with distrust.

The dissenters pointed out that the "sole issue" in Anthony's case was the credibility of the State's chief witness, Hofhines. As described in the dissent, "The entire closing argument of both parties was basically directed to either building up or attacking her credibility", and "the fact that she had been charged with the [murder] and had entered a plea of guilty was the basic starting point for evaluating her motive for testifying." [8]

The dissenters pointed out that the jurors had received the standard instructions on evaluating a witness's testimony based on the witness's "bias and interest in the outcome of the case", as well as an instruction on the rule that a criminal conviction cannot rest on the uncorroborated testimony of an accomplice. [9]

---

[8]  *Id.* at 497.

[9]  *Ibid.*

Under these circumstances, the dissenters concluded, the trial judge's failure to expressly instruct the jurors that an accomplice's testimony should be viewed with distrust did not rise to the level of plain error — *i.e.*, it did not constitute "such basic and fundamental unfairness [as] to call for the intervention of this court [when there was no] objection in the trial court." [10]

A year and a half later, in Supreme Court Order No. 222, the supreme court effectively adopted the dissenters' position.

Supreme Court Order No. 222 amended Criminal Rule 30(b) by eliminating the provision that required trial judges to give the "distrust the testimony of an accomplice" instruction in all circumstances, even when neither party requested that instruction.

This change to Rule 30(b) was an implicit rejection of the position taken by the *Anthony* majority: the position that, whenever an accomplice testifies at a criminal trial, the trial is fundamentally unfair unless the jury receives an instruction in which the judge expressly endorses the principle that the testimony of an accomplice should be viewed with distrust.

Instead, under the amended version of Rule 30(b), Alaska law reflects the position of the *Anthony* dissenters: When an accomplice testifies, and when neither party requests a "distrust the testimony of an accomplice" instruction, the trial can still be fair so long as the judge instructs the jurors that they are entitled to consider a witness's potential bias, a witness's potential motive for testifying, and a witness's interest in the outcome of the case — instructions that allow the lawyers full scope to attack and defend the credibility and weight of the accomplice's testimony. [11]

---

[10] *Ibid.*

[11] See *Alexander v. State*, 611 P.2d 469, 479 (Alaska 1980), where the supreme court
(continued...)

*Situations in which it may be inappropriate to give the "distrust the testimony of an accomplice" instruction*

Because Alaska law no longer takes the view that an explicit "distrust the testimony of an accomplice" instruction is a mandatory component of a fair trial, Alaska trial judges must actively consider whether this instruction should be given, even when one of the parties affirmatively asks for the instruction.

As we have explained, the rationale behind this jury instruction is the possibility that an accomplice to a crime will falsely incriminate another person in an effort to obtain clemency from the government — in Wigmore's words, "to save himself from punishment by procuring the conviction of others", thus prompting "the prosecuting authorities [to] choose to release him". As our own supreme court stated in *Fresneda v. State*, 458 P.2d 134, 144 (Alaska 1969), "An accomplice's testimony is viewed with distrust, because the accomplice usually believes he has a personal interest in aiding the prosecution."

But as Wigmore explains, this rationale does not apply if the "supposed promise or expectation of conditional clemency ... is lacking". In such cases, "the whole basis of distrust fails", and the instruction is no longer supported.

Many times, of course, a defense attorney will request a "distrust the testimony of an accomplice" instruction in the traditional circumstances that gave rise to the instruction:  circumstances where an accomplice to the crime testifies for the government in exchange for favorable treatment. But accomplices sometimes testify at criminal trials under other circumstances.

---

[11]  (...continued)
held that a trial was fair even though the trial judge declined to give one of the other instructions that were formerly mandated by Criminal Rule 30(b) — the instruction to view a defendant's out-of-court verbal admissions with caution.

For instance, this Court has acknowledged that, from time to time in prosecutions for physical or sexual abuse of a child, there will be a significant possibility that the spouse of the defendant is an uncharged accomplice to the acts of abuse. *See State v. Morris*, 680 P.2d 1190, 1194 n. 3 (Alaska App. 1984). In such cases, there will be times when the defendant's spouse takes the stand and denies that the acts of abuse occurred, or minimizes the seriousness of those acts. In these instances, if the judge gives a "distrust the testimony of an accomplice" instruction, the jurors may well perceive this instruction as a judicial directive to distrust the exculpatory testimony of the spouse.

Another non-traditional situation was presented to this Court in *Hohman v. State*, 669 P.2d 1316 (Alaska App. 1983). The defendant in *Hohman* was a state legislator who was accused of personally accepting a bribe, and of offering a related bribe to another legislator. [12] To prosecute Hohman, the State immunized two other participants in the bribery scheme, Michael DeMan and Sigurd Larsen. [13] Both DeMan and Larsen were unwilling recipients of immunity — and when they were forced to testify, they testified in favor of Hohman. [14]

At the conclusion of Hohman's trial, the judge instructed the jurors that they should examine the testimony of these immunized witnesses "with greater care than the testimony of an ordinary witness". [15] On appeal, Hohman argued that this instruction

---

[12]  *Hohman*, 669 P.2d at 1318.

[13]  *Id.* at 1322.

[14]  *Id.* at 1322 & 1323.

[15]  *Id.* at 1322.

amounted to an adverse judicial comment on DeMan's and Larsen's exculpatory testimony, and that this judicial comment denied him due process of law. [16]

In rejecting Hohman's claim of error, this Court noted that there was a long line of judicial decisions holding that it is proper to give a "distrust the testimony of an accomplice" instruction when an accomplice to a crime testifies *in favor* of the defendant — because of the significant chance that the accomplice will lie out of loyalty to the defendant. [17]

(Indeed, Michael DeMan was later convicted of perjury for the exculpatory testimony he gave at Hohman's trial. *See DeMan v. State*, 677 P.2d 903, 906 (Alaska App. 1984).)

Nevertheless, this Court stated that "a better practice" would have been for the trial judge to augment the standard instructions on evaluating witness credibility — by adding a clause which told the jurors that, in addition to the other factors bearing on witness credibility, the jurors could consider the fact that a witness had been granted immunity from prosecution. [18] By handling the situation this way, we explained, the judge could "avoid any possible danger that the jury [would] conclude that the trial judge [was] expressing an opinion on the weight of the evidence." [19]

---

[16] *Ibid.*

[17] *Ibid.*

[18] *Id.* at 1323.

[19] *Ibid.*

*Application of this law to Wynne's case*

Wynne's case presents yet another factual scenario that falls outside the traditional rationale of the "distrust the testimony of an accomplice" instruction: a situation where two co-defendants are being tried together, and where one defendant takes the stand in an attempt to lay all the blame on the other defendant.

As we have explained, Wynne testified at trial that any wrongdoing was committed solely by his co-defendant Williams. In response to Wynne's testimony, Williams's attorney requested the "distrust the testimony of an accomplice" instruction. At that point, the trial judge was faced with a conundrum.

Because Wynne was charged with being a participant in the robberies, there was reason to think that he might be motivated to falsely lay the blame on Williams. Thus, Williams was seemingly entitled to have the jury instructed that Wynne's testimony should be viewed with distrust.

But under these circumstances, there was a significant risk that the jurors might view a "distrust the testimony of an accomplice" instruction as a *judicial comment* on how they should evaluate Wynne's self-exculpatory testimony.

We conclude that the proper course for trial judges in this situation is to refrain from giving the "distrust the testimony of an accomplice" instruction. We reach this conclusion for two reasons.

First, the traditional rationale behind the instruction does not apply to this situation. There is no suggestion that Wynne had received or was negotiating for clemency from the authorities when he gave his testimony. And as Wigmore explains, if the "supposed promise or expectation of conditional clemency ... is lacking", then "the whole basis of distrust fails", and the jury instruction is no longer supported.

Second, the standard instructions on evaluating the credibility of witnesses already expressly direct the jurors to consider a witness's potential bias, their potential motive for testifying, and their interest in the outcome of the case.[20] Under these standard instructions, when a case arises where one co-defendant takes the stand and testifies that the other defendant is wholly to blame, the attorney who represents the non-testifying defendant has full scope to attack the testimony of the testifying defendant. And the virtue of the standard instructions is that they offer no hint of the judge's view of these matters.

Although we conclude that it was error for the trial judge in Wynne's case to give a "distrust the testimony of an accomplice" instruction, we nonetheless conclude that the error was harmless. We reach this conclusion for two reasons.

First, given the facts of this case, it was obvious that Wynne had a potential motive to lie about his participation in the robbery and to try to falsely shift the blame to his co-defendant, Williams. We are convinced that the jury instruction about distrusting the testimony of an accomplice did not cause the jurors to be any more skeptical of Wynne's testimony than they otherwise would have been.

Second, the State's evidence that Wynne committed the first robbery was quite strong.

Earlier on the day of the robbery, Wynne asked his close friend, Jerika Ratcliff, to pick him up at his residence, and then to pick up Williams. Ratcliff drove Wynne and Williams to the apartment building where the robbery occurred. Wynne and Williams went inside. Sometime later, Wynne returned to the car alone. He was carrying a television set and a large hunting knife — items later identified as having been stolen during the robbery.

---

[20] *See* Alaska Criminal Pattern Jury Instruction 1.10 (2012).

Ratcliff and Wynne then waited in the car for Williams to return. When Ratcliff became anxious to leave, Wynne went back into the building, intending to retrieve Williams. But almost immediately, Wynne returned to the car alone, and he told Ratcliff to start driving. By this time, they could hear police sirens.

The police pulled them over a short distance from the apartment building. Inside the car, the police found a bag containing a holster, masks, gloves, a knife, duct tape, a walkie-talkie, and sanitary wipes.

Given the fact that there were obvious reasons why Wynne might be motivated to testify falsely, and given the strength of the evidence tying Wynne to the robbery, we conclude that the challenged jury instruction did not appreciably affect the jury's verdict, and that the error was therefore harmless. [21]

*Conclusion*

The judgement of the superior court is AFFIRMED.

---

[21] *See Love v. State*, 457 P.2d 622, 631-32, 634 (Alaska 1969).